1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16
17
18

MARGRETTY RABANG, OLIVE OSHIRO, DOMINADOR AURE, CHRISTINA PEATO, and ELIZABETH OSHIRO,

Plaintiffs,

v.

ROBERT KELLY, JR., RICK D. GEORGE, AGRIPINA SMITH, BOB SOLOMON, LONA JOHNSON, KATHERINE CANETE, RAYMOND DODGE, ELIZABETH KING GEORGE, KATRICE ROMERO, DONIA EDWARDS, and RICKIE ARMSTRONG,

Defendants.

Case No.   2:17-CV-00088-JCC

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

**DEMAND FOR JURY TRIAL**

19
20
21
22
23
24
25

Plaintiffs bring this civil action to rectify Defendants' violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO").   Defendants are advancing a scheme to defraud Plaintiffs of money and property.   Defendants are purporting to act as an Indian tribal government although the United States, particularly its Department of the Interior ("DOI"), has already determined, repeatedly, that Defendants are acting illegally.

## I.       NATURE OF THE CASE

1.       Defendants Robert Kelly, Jr., Rick D. George ("George"), Agripina Smith, Bob

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Solomon, Lona Johnson, Katherine Canete, Elizabeth King George ("King George"), Katrice Romero, Raymond Dodge, and Rickie Armstrong (collectively, "RICO Defendants") have violated RICO.

2.	Since at least March 2016, Defendants Kelly, George, Smith, Solomon, Johnson, and Canete (collectively, "Holdover Council Defendants") have falsely behaved and represented themselves as the Nooksack Indian Tribe ("Tribe") or Nooksack Indian Tribal Council ("NITC"). RICO Defendants' acts and omissions were deliberate and part of a scheme that began by December 2015 to defraud Plaintiffs of money, property, and benefits of monetary value by depriving them of Tribal citizenship through false pretenses and representations.

3.	RICO Defendants carried out their scheme to defraud Plaintiffs, through their official positions in or other affiliations with the Tribe, NITC, Nooksack Enrollment Department ("NED"), Nooksack Indian Housing Authority ("NIHA"), Nooksack Tribal Court ("NTC"), Nooksack Indian Health Department ("NIHD"), Nooksack Social Services Department ("NSSD"), and Nooksack Education Department ("NEdD").  RICO Defendants used or caused the use of the mails and wires to execute their scheme, and to personally enrich themselves.

## II.	PARTIES

### A.	Plaintiffs.

4.	MARGRETTY RABANG is a 56-year-old resident of Whatcom County, Washington. Ms. Rabang participates in a lease-to-own program for her home pursuant to HUD's Mutual Help Occupancy Program ("MHOP"), which is administered by NIHA.  HUD MHOP allows NIHA to help low-income Nooksack Indian families purchase a home by limiting monthly payments to a percentage of adjusted gross income and crediting those payments to an equity account for purchase of the home.  Ms. Rabang, through her husband Robert Rabang, and the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 2

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

NIHA entered into a HUD MHOP agreement regarding her home in 2006. As of October 1, 2016, Ms. Rabang needed to pay off only $9,326.68 before she owned her home outright under the terms of that agreement.

5.    OLIVE OSHIRO is an 80-year-old resident of Whatcom County, Washington. Ms. Oshiro suffers from numerous serious health conditions, including Sjogren's syndrome, lung disease, high blood pressure, thyroid disease, and restless leg syndrome. Ms. Oshiro also is experiencing the early stages of dementia, including insomnia and depression. Ms. Oshiro relies on federally funded healthcare services provided by the Tribe and NIHD for treatment of her many serious health conditions.

6.    DOMINADOR AURE is a 56-year-old resident of Whatcom County, Washington. After Mr. Aure was diagnosed with renal disease in 2009, he received a kidney transplant in 2015. As a result of the transplant, Mr. Aure must be on anti-rejection medication for the rest of his life. Mr. Aure relies on federally funded health care services provided by the Tribe and NIHD for treatment of his serious health condition. As the father of five children, Mr. Aure also relies upon federal Temporary Assistance for Needy Families ("TANF") funding to survive.

7.    CHRISTINA PEATO is a 38-year-old resident of Whatcom County, Washington. Ms. Peato is the mother of three minor-aged children and serves as caretaker of two additional minor-aged children. Ms. Peato relies on federally funded health care services provided through the Tribe as well as TANF funding for her family and children.

8.    ELIZABETH OSHIRO is a 48-year-old resident of Whatcom County, Washington. Ms. Oshiro is the mother of four children and serves as sole caregiver to her ailing mother, Plaintiff Olive Oshiro. Prior to her illegal eviction from her home in July of 2016, Ms. Oshiro also participated in the HUD MHOP lease-to-own program at Nooksack, beginning in

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

2002. As of the date of her illegal eviction facilitated by RICO Defendants, Ms. Oshiro needed to make only one more payment before she owned the property outright under the terms of her HUD MHOP agreement with NIHA. Ms. Oshiro's minor-aged Son, K.O., also received federal Johnson O'Malley ("JOM") education funding prior to his illegal disenrollment from the Tribe.

9. Plaintiffs are each enrolled members of the Tribe who were purportedly disenrolled by Holdover Council Defendants in June and November of 2016.

**B. Defendants**

**1. Holdover Council Defendants.**

10. The following six Defendants collectively constitute the "Holdover NITC" or "Holdover Council Defendants." Defendants George, Smith, Johnson, and Canete are referred to as the "Holdover Councilpersons," as of March 24, 2016, as alleged below.

11. ROBERT KELLY, JR., is a resident of Whatcom County, Washington, and Chairman of the NITC. Defendant Kelly leads and acts as part of the Holdover NITC.

12. RICK D. GEORGE is a resident of Whatcom County, Washington, and purported Vice Chairman of the NITC. Having refused to vacate his expired seat in the NITC, Defendant George acts as part of the Holdover NITC.

13. AGRIPINA SMITH is a resident of Whatcom County, Washington, and purported Treasurer of the NITC. Having refused to vacate her expired seat on the NITC, Defendant Smith acts as part of the Holdover NITC.

14. BOB SOLOMON is a resident of Whatcom County, Washington, and Councilperson on the NITC. Defendant Solomon acts as part of the Holdover NITC.

15. LONA JOHNSON is a resident of Whatcom County, Washington, purported Councilperson on the NITC. Defendant Johnson also is the Director of the NIHD, which is a

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

subordinate body of the NITC. Having refused to vacate her expired seat in the NITC, Defendant Johnson acts as part of the Holdover NITC.

16.     KATHERINE CANETE is a resident of Whatcom County, Washington, purported Councilperson on the NITC. Defendant Canete also is the General Manager of the Tribe. Having refused to vacate her expired seat in the NITC, Defendant Canete acts as part of the Holdover NITC.

**2.      Other RICO Defendants.**

17.     RAYMOND DODGE is a resident of Whatcom County, Washington, the immediate past Tribal Attorney with the Nooksack Office of Tribal Attorney, and the purported Chief Judge of the NTC, a subordinate body of the NITC.

18.     ELIZABETH KING GEORGE is a resident of King County, Washington, and the Director of the NED, a subordinate body of the NITC.

19.     KATRICE ROMERO is a resident of Whatcom County, Washington, sister of Defendant Canete, and the Director of the NIHA. The NIHA is a subordinate body of the NITC.

20.     DONIA EDWARDS is a resident of Whatcom County, Washington, and the Director of the NEdD, a subordinate body of the NITC.

21.     RICKIE ARMSTRONG is a resident of Whatcom County, Washington, and Tribal Attorney with the Nooksack Office of Tribal Attorney, purporting to serve as legal counsel for the Tribe, and all other named subordinate departments of the Tribe. Defendant Armstrong serves as legal counsel for the Holdover NITC.

22.     All Defendants are sued in their personal capacities.

### III.      JURISDICTION AND VENUE

23.     The Court possess jurisdiction under 28 U.S.C. § 1331. Plaintiffs' claims present

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

federal questions.

24. Venue is proper in the Western District of Washington. The Tribe is located geographically within the State of Washington. A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Whatcom County, Washington. 28 U.S.C. § 1391(a)(2). Defendants transacted their affairs in Whatcom County, Washington. 18 U.S.C. § 1965(a). Whatcom County, Washington, is located within the Western District of Washington.

25. The Tribe's sovereign immunity does not bar this personal capacity suit.

## IV. FACTS

26. The United States acknowledged the Tribe in 1973. The Constitution and Bylaws of the Nooksack Indian Tribe govern the Tribe and established the NITC to chiefly carry out Tribal governance. The Nooksack Constitution requires that NITC consist of one chairman, one vice-chairman, one secretary, one treasurer, and four councilmen.

27. The Nooksack Constitution mandates that "elections for the tribal council shall be called within 90 days prior to the expiration of the terms of office of its members. After the first election, all members of council shall run for four-year terms." Five members constitute a quorum for the NITC. The NITC cannot transact any Tribal business without a quorum of at least five members present.

28. The four-year terms of Defendant George's vice chairmanship, Defendant Smith's treasurer position, and Defendant Johnson's and Canete's respective councilmember positions, each expired on March 24, 2016. Holdover Councilpersons have refused to vacate those NITC seats since March 24, 2016.

29. The NITC has lacked a quorum of at least five members by which to transact any Tribal business, and have acted in illegal holdover status, since March 24, 2016.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 6

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

30.     By October 17, 2016, Lawrence S. Roberts, DOI's Principal Deputy Assistant Secretary of Indian Affairs ("AS-IA Roberts"), issued a decision to Holdover Council Defendants, formally finding that since March 24, 2016, the Holdover NITC has acted illegally, lacked authority, and cannot undertake business on behalf of the Tribe.  Defendants have ignored AS-IA Roberts' final agency determination and other final agency determinations rendered by the Federal Government, as detailed below.

**A.    Holdover Council Defendants Prevent and Cancel Tribal Elections.**

31.     Defendants' scheme to defraud Plaintiffs and the Federal Government began with fraudulently preventing elections for half of the eight NITC seats.  With the chairman not allowed to vote except to break a tie, Holdover Council Defendants realized they needed to occupy at least four other NITC seats to carry out their scheme to defraud Plaintiffs of money, property, and benefits by depriving Plaintiffs of their Tribal membership, and to personally enrich themselves with hundreds of thousands of dollars in salaries, stipends, and other benefits funded through federal contracts and grants.[1]

32.     In 2012, Holdover Councilperson Defendants were each elected to serve four-year terms on the NITC.  Holdover Councilperson Defendants were sworn in for those offices by March 24, 2012.  The seats still held by Holdover Councilperson Defendants expired by March 24, 2016.

33.     The Nooksack Constitution required that elections for the four NITC seats occupied by Holdover Councilperson Defendants be called within ninety (90) days prior to the expiration of the terms of those NITC offices.  As of December 2015, Tribal law required Defendant Kelly, as Chairman, to appoint an Election Superintendent and in turn hold a Primary

---

[1] For example, in 2015, Chairman Kelly received a $144,266 salary, over 50% of which was funded through federal dollars, specifically "indirect" or administrative costs charged to the U.S. pursuant to federal-tribal contracts.

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Election on February 20, 2016, and General Election on March 19, 2016, for the four open NITC seats.

34.    By December 3, 2015, Defendant Kelly failed to appoint an Election Superintendent as required.

35.    On December 18, 2015, Holdover Council Defendants amended Tribal law to gerrymander via mail-in voting and otherwise rig both the February 20, 2016, Primary Election and March 19, 2016, General Election for the four NITC seats.

36.    On January 20, 2016, Holdover Council Defendants—including the Holdover Councilpersons—announced at a Nooksack Community Council meeting that they had "cancelled" the February 20, 2016, Primary Election and the March 19, 2016, General Election for the NITC seats occupied by the Holdover Councilpersons.  Holdover Council Defendants then pronounced that they had "postponed" any Tribal election for those seats until *after* disenrollment proceedings against Plaintiffs and over 275 other Tribal members were complete.  Holdover Council Defendants then refused to call or commence a Primary Election by February 20, 2016, and a General Election by March 19, 2016.

37.    On March 24, 2016, the four-year terms of the NITC positions occupied by Holdover Councilpersons lapsed.  AS-IA Roberts subsequently declared those four seats "expired" and thus "vacant" as of March 24, 2016.

38.    As of March 24, 2016, the Holdover NITC, by its own design, lacked and continues to lack the quorum necessary to take official action on behalf of the Tribe or direct the affairs of the Tribe.  Any acts of Holdover Council Defendants or of the governmental entities subordinate to the NITC committed by the RICO Defendants are fraudulent, particularly pursuant to AS-IA Roberts' final agency determination and other such federal determinations.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 8

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

**B.  Holdover Council Defendants Act To Further The Scheme, And RICO Defendants Act In Concert With Holdover Council Defendants, To Defraud Plaintiffs.**

39.     On March 28, 2016, Holdover Council Defendants terminated NTC Chief Judge Susan Alexander—who was appointed lawfully by the NITC effective as of June 1, 2015—as she was in the final stage of preparing a ruling to compel Holdover Council Defendants to call the election for the four now expired and vacant NITC seats.[2]  Holdover Council Defendants, lacking a quorum, fraudulently fired Judge Alexander, and fraudulently replaced her with in-house Nooksack Tribal Attorney Ray Dodge on June 13, 2016.

40.     On April 29, 2016, Plaintiff Rabang filed suit in NTC for prospective equitable relief, including "declaratory judgment that [Holdover Council Defendants] have no authority to act on may matter, including [Ms. Rabang's] disenrollment."  Ms. Rabang also filed a Motion for Permanent Injunction.  She was forced to file these papers *pro se* because Holdover Council Defendants had refused to issue a "business license" to Ms. Rabang's chosen counsel, Garvey Schubert Barer, who could not obtain admission to practice before the NTC.  At the direction of Holdover Council Defendants and Defendant Dodge, and in an effort to further their scheme to defraud Plaintiffs, the NTC never convened Plaintiff Rabang's *pro se* lawsuit.

41.     On June 3, 2016, Holdover Council Defendants, still lacking a quorum, purported to pass NITC Resolutions to disenroll Plaintiffs Rabang and Elizabeth Oshiro from the Tribe.

42.     On June 6, 2016, at the direction of Holdover Council Defendants, NED Director Defendant King George mailed Ms. Rabang an "IMPORTANT LEGAL NOTICE OF INVOLUNTARY DISENROLLMENT."  The Notice purported to be from the Tribe and

---

[2] Memorandum from Susan M. Alexander to Samantha Wohlfeil, Reporter, The Bellingham Herald (Apr. 21, 2016) *available at* http://media.bellinghamherald.com/static/downloads/AlexanderMemo.pdf; *see also* Samantha Wohlfeil, *Nooksack Tribe fires judge handling disenrollment case*, THE BELLINGHAM HERALD (Apr. 22, 2016) *http://www.bellinghamherald.com/news/local/article73366262.html.*

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 9

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

informed Ms. Rabang that Holdover Council Defendants had acted to supposedly disenrolled her from the Tribe.

43.     On June 8, 2016, Holdover Council Defendants notified the NIHA by mail or wire that it had disenrolled Plaintiffs Rabang and Elizabeth Oshiro.  Holdover Council Defendants, together with other RICO Defendants Romero, Dodge and Armstrong, then utilized the NIHA and NTC to defraud Ms. Rabang and Ms. Oshiro of their HUD MHOP homes.

44.     In July 2016, Defendant Romero mailed a "30-day Termination Notice" to Plaintiff Elizabeth Oshiro.  The Notice stated that the NIHA intended to unilaterally terminate Ms. Oshiro's HUD MHOP.  Ms. Oshiro would, in other words, be defrauded of her own investment in her home and federal funds because of RICO Defendants' scheme.

45.     On July 11, 2016, Defendants Dodge and Armstrong caused an "Amended Notice of Hearing" regarding an eviction hearing to be mailed to Plaintiff Elizabeth Oshiro in an effort to defraud her of her home.  On July 20, 2016, Defendant Dodge, as "Chief Judge" of the NTC, issued an eviction order that set Ms. Oshiro's eviction for July 27, 2016.  Defendant Dodge sent the eviction order by mail or wire to Defendant Romero that same day.

46.     On July 20, 2016, Defendant Dodge caused Plaintiff Elizabeth Oshiro to be evicted from her HUD MHOP home.  As a result of their scheme to defraud Plaintiffs, RICO Defendants defrauded Ms. Oshiro of her home as well as her investment in it.

47.     On August 19, 2016, Defendant Romero caused a "NOTICE OF TERMINATION/NOTICE TO VACATE" to be mailed to Plaintiff Rabang.  The Notice stated that the NIHA intended to unilaterally terminate Ms. Rabang's HUD MHOP.  Like Plaintiff Elizabeth Oshiro, Ms. Rabang would too, in other words, be defrauded of her own investment in her home and federal funds as a direct result of RICO Defendants' scheme.

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

48.     On October 3, 2016, Defendant Romero mailed a "14 DAY NOTICE TO VACATE" to Plaintiff Rabang.  The Notice advised Ms. Rabang: "Your MHOP Agreement and participation with NIHA is terminated Effective [sic] September 19, 2016."

49.     On October 11, 2016, Plaintiff Rabang attempted to file a second lawsuit in the NTC against Defendant Romero for prospective equitable relief, likewise seeking a "declaratory judgment that Defendant has no authority to act on any matter, including [Ms. Rabang's] housing, because of the Tribe's defunct status since March 24, 2016."   At the direction of Holdover Council Defendants and Defendant Dodge, the NTC "REJECTED" Ms. Rabang's Complaint and again refused to convene Ms. Rabang's lawsuit.

50.     On October 17, 2016, AS-IA Roberts issued a decision to Holdover Council Defendants, which in pertinent part provides:

> As you know, the Nooksack Tribal Council (Council) lacks a quorum to conduct tribal business as required by the Nooksack Tribe's (Tribe) Constitution and Bylaws. Four Council members' terms expired in March 2016, and an election was never held to fill their seats. The Council currently consists of four members . . . pursuant to the plain language of the Tribe's Constitution and Bylaws, the Council must have five duly elected officers to take any official action. **[The DOI] will only recognize those actions taken by the [Nooksack Tribal] Council prior to March 24, 2016, when a quorum existed, and will not recognize any actions taken since that time** . . .

("Roberts Decision") (emphasis added).   AS-IA Roberts, the highest-ranking federal Indian official in the Nation, is the sole authority responsible for "maintaining the Federal-Tribal government-to-government relationship" and determining who is and who is not allowed to carry out acts on behalf of the tribal governments.  The Holdover Council has not appealed or otherwise challenged the Roberts Decision.

51.     That same day, on or about October 17, 2016, Holdover Council Defendants mailed Plaintiffs and over 275 other Tribal members a one-page "Notice of Involuntary

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Disenrollment."

52.      On October 25, 2016, Defendant Kelly acknowledged receipt of Roberts Decision via a letter transmitted to AS-IA Roberts via both mail and wire, and copied to "Tribal Council." Defendant Kelly claimed to not have received the Roberts Decision until October 21, 2016. Beyond Defendant Kelly's October 25, 2016 letter, RICO Defendants have ignored the Roberts Decision.

53.      On November 2, 2016, the NIHA, through Defendant Armstrong, filed a Complaint for Unlawful Detainer against Plaintiff Rabang in NTC.  Holdover Council Defendants, together with Defendants Romero, Dodge and Armstrong, caused the NTC to convene NIHA's lawsuit.

54.      By November 4, 2016, Holdover Council Defendants conducted a "referendum election" by mail to disenroll Plaintiffs and over 275 other Tribal members.

55.      On November 9, 2016, Holdover Council Defendants mailed Plaintiffs and over 275 other Tribal members an "IMPORTANT LEGAL NOTICE OF DISENROLLMENT."  The Notice stated that a disenrollment "meeting date" had been set via teleconference for November 16, 17 or 18, 2016.  The Notice directed Plaintiffs to e-mail or call the Tribe to confirm the "meeting," which each of those named Plaintiffs in turn did.  The Notice also indicated that Holdover Council Defendants would participate in the telephonic meeting.

56.      On November 14, 2016, AS-IA Roberts issued a second decision to Holdover Council Defendants:

> I want to reiterate that pursuant to our Nation-to-Nation relationship, **the Department of the Interior (Department) will not recognize actions by you and the current Tribal Council members without a quorum consistent with the Nooksack Tribe's (Tribe) Constitution . . . As I stated in my October 17, 2016 letter, the Department will only recognize those actions taken by the**

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

**Tribal Council prior to March 2016, when a quorum existed, and will not recognize any actions taken since that time because of the lack of quorum.** Accordingly, until a Council is seated through an election consistent with tribal law and the decisions of the Northwest Intertribal Court System, we will not recognize any "referendum election" including the purported results posted on the Tribe's Facebook page on November 4, 2016, claiming to disenroll current tribal citizens or any other action inconsistent with the plan language of the Tribe's laws.

(emphasis added). Holdover Council Defendants and Defendant King George's disenrollment efforts violate federal law. *See* 25 C.F.R. §§ 2.6(a), (b); 43 C.F.R. § 4.314(a); *St. Germain v. Acting N.W. Reg'l Dir*., IBIA No.16-022. Holdover Council Defendants have not appealed or otherwise challenged AS-IA Roberts' second decision either.

57. On November 16, 17, and 18, 2016, Holdover Council Defendants conducted 10-minute "meetings" via teleconference to accomplish the purported disenrollment of Plaintiffs and over 275 other Tribal members. Holdover Council Defendants participated in the telephonic meetings.

58. On November 18, 2016, HHS Indian Health Service Portland Area Director Dean M. Seyler informed Defendant Kelly that HHS would not recognize any post-March 24, 2016, actions of Holdover Council Defendants "until the Tribe has a sufficient quorum . . ." HHS cited to the Roberts Decision.

59. On November 22, 2016, Holdover Council Defendants purportedly passed over 275 NITC Resolutions to disenroll Plaintiffs and over 275 other Tribal members, respectively.

60. On November 28, 2016, Holdover Council Defendants notified the NSSD by that it had purportedly disenrolled Plaintiffs Aure and Peato. Holdover Council Defendants instructed the NSSD to deny Mr. Aure and Ms. Peato—both parents to several small children—TANF assistance.

61. On November 30, 2016, at the direction of Holdover Council Defendants, NIHD

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Director Defendant Johnson mailed Plaintiffs Aure and Peato a letter regarding "Notice of Discontinuation of Services." Defendant Johnson informed Mr. Aure and Ms. Peato that they were ineligible for NIHD-provided health care services based on actions taken by Holdover Council Defendants.

62.     On December 1, 2016, at the direction of Holdover Council Defendants, NSSD TANF Program Director Heidi Davis mailed Plaintiffs Aure and Peato a letter discontinuing their TANF benefits effective as of December 11, 2016.

63.     On December 9, 2016, Tom Carney HUD Office of Native American Programs Director, informed Holdover Council Defendants that HUD had rejected the NIHA's FY 2017 Indian Housing Plan, citing the Roberts Decision to not recognize any actions taken by Holdover Council since March 24, 2016. Holdover Council Defendants have not appealed or otherwise challenged Mr. Carney's decision.

64.     On December 13, 2016, HHS Indian Health Service Principal Deputy Director Mary Smith informed Holdover Council Defendants that HHS would not recognize the acts of Holdover Council Defendants to disenroll Plaintiffs because Holdover Council Defendants "lacked a sufficient quorum and were done in violation of the Tribe's own Constitution and bylaws," also citing to the Roberts Decision. Holdover Council Defendants have not appealed or otherwise challenged Principal Deputy Director Smith's decision.

65.     On December 14, 2016, at the direction of the Holdover Council Defendants and NIHD Director Defendant Johnson mailed Plaintiff Elizabeth Oshiro a letter stating that the NIHD had denied her application for HHS-funded Community Health Program benefits.

66.     On December 14, 2016, Holdover Council Defendants and Defendant Johnson caused a letter to be mailed to S.C., Plaintiff Aure's minor-aged son, informing S.C. that his

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

application for HHS-funded Community Health Program benefits was denied "due to the recent disenrollment."

67. On December 15, 2016, Defendant Dodge issued an "Order Allowing Entry Order of Eviction and Writ of Restitution" ("Eviction Order"), which "ORDERED evicted" Plaintiff Rabang and her family from her HUD MHOP home. The Eviction Order also directed Nooksack Tribal Police to evict Ms. Rabang and all her family from her home by December 28, 2016.

68. On December 22, 2016, Defendant Dodge issued an "Order Following Show Cause Hearing" ("Order Following Show Cause"), amending his Eviction Order to evict Plaintiff Rabang "and all members of her household" by December 28, 2016. Defendant Dodge mailed his Order Following Show Cause to Ms. Rabang on December 23, 2016.

69. On December 23, 2016, AS-IA Roberts issued a third decision to Holdover Council Defendants:

> On October 17, 2016, and November 14, 2016, I sent letters to you regarding the status of the [NITC Council]. The letters explained that, pursuant to [the Tribe's] constitution and laws, as of April 2016, the Tribal Council is no longer operating with a quorum and therefore lacks authority to conduct business on behalf of the Tribe. The letter stated further that the Department of the Interior (Department) will recognize only those actions taken by the Tribal Council prior to March 24, 2016, when a quorum existed, and would not recognize any subsequent actions by the Tribal Council until a valid election, consistent with the Tribe's constitution and the decisions of the Tribe's Court of Appeals, the Northwest Intertribal Court System, is held and a quorum of council members is achieved.

> It has come to the Department's attention that orders of eviction may have been recently issued to be served by the Nooksack Chief of Police or could be issued and served in the near future. **It appears that such orders are based on actions taken by the Tribal Council after March 24, 2016. Therefore, as explained to you above and in the previous letters to you, those orders are invalid and the Department does not recognize them as lawful . . .**

(emphasis added). Holdover Council Defendants have not appealed or otherwise challenged AS-IA Roberts' third decision either.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 15

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

70.     On January 3, 2017, Defendant Edwards caused Plaintiff Elizabeth Oshiro to be mailed a letter informing her that federal Johnson O'Malley education assistance for her son was denied "due to the recent disenrollment."

71.     The efforts to defraud Ms. Rabang of her HUD MHOP home remain ongoing. Holdover Council Defendants along with Defendants Romero, Dodge and Armstrong continue to aggressively pursue Ms. Rabang in NTC, and have directed the Nooksack police to do the same, despite AS-IA Roberts' third decision in particular.

72.     RICO Defendants' fraudulent activities remain ongoing.

## IV.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
**Violations of Federal Civil RICO—Conduct of a RICO Enterprise, 18 U.S.C. § 1962(c)**
**(RICO Defendants)**

73.     Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

74.     At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

75.     RICO Defendants each violated 18 U.S.C. § 1962(c) by the acts described in the paragraphs below.

**The Enterprises**.

*The Nooksack Indian Tribe*

76.     At all relevant times, the Tribe constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, the Tribe was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times, RICO Defendants held a position in the Tribe as well as

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 16

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

participated in the operation, management, and directed the affairs of the Tribe. The Tribe, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. The Tribe exists separate and apart from the pattern of racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the Tribe.

*The Nooksack Indian Tribal Council*

77.     At all relevant times, NITC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NITC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in or were otherwise affiliated with NITC as well as participated in the operation, management, and directed the affairs of NITC. NITC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. NITC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of operating as the governing body of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NITC.

*Nooksack Tribal Court*

78.     At all relevant times, NTC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NTC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in or were otherwise affiliated with NTC as well as participated in the operation, management, and directed the affairs of NTC. NTC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

extending beyond RICO Defendants' racketeering activity. NTC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing a forum for the Tribal community to resolve disputes. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NTC.

*Nooksack Indian Housing Authority*

79. At all relevant times, NIHA constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NIHA was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in or were otherwise affiliated with NIHA as well as participated in the operation, management, and directed the affairs of NIHA. NIHA, as alleged herein, was not limited to RICO Defendants' predicate acts and has business extending beyond RICO Defendants' racketeering activity. NIHA exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing housing-related services to the Tribal community. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHA.

*Nooksack Enrollment Department*

80. At all times relevant hereto, NED constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NED was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position in or were otherwise affiliated with NED as well as participated in the operation, management, and directed the affairs

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

of the NED.  NED, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  NED exists separate and apart from the pattern of racketeering activity for the purpose of providing information regarding the enrollment process and criteria for enrollment, processing enrollment applications, and keeping records and statistics for all members of the Tribe.  RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NED.

*Nooksack Indian Health Department*

81.     At all relevant times, NIHD constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, NIHD was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times, RICO Defendants held a position in or were otherwise affiliated with NIHD as well as participated in the operation, management, and directed the affairs of NIHD.  NIHD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  NIHD exists separate and apart from the pattern of racketeering activity for the purpose of providing health care services for the Tribe.  RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHD.

*Nooksack Education Department*

82.     At all relevant times, NEdD constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

83.     At all relevant times, NEdD was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

relevant times, RICO Defendants held a position in or were otherwise affiliated with NEdD as well as participated in the operation, management, and directed the affairs of NEdD. NEdD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. NEdD exists separate and apart from the pattern of racketeering activity for the purpose of providing quality educational opportunities for Tribal members. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the NEdD.

**Pattern of Racketeering Activity**.

84.     RICO Defendants, each of whom are persons associated with, or employed by, the Tribe, NITC, NIHA, NTC, NED, NIHD, and NEdD, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the Tribe, NITC, NIHA, NTC, NED, NIHD, and NEdD through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c), through multiple instances of Mail Fraud and Wire Fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

**Use of the Mails and Wires to Defraud, in violation of 18 U.S.C. §§ 1341 and 1343.**

85.     RICO Defendants devised or intended to devise a scheme to defraud Plaintiffs of money, property, and other tribal, state, and federal benefits of monetary value by depriving Plaintiffs of their Tribal membership by means of false or fraudulent pretenses and representations.

86.     For the purposes of executing their scheme, RICO Defendants delivered or caused delivery of various documents and things by the U.S. mails or by private or commercial interstate carriers, or received such therefrom. For the purposes of executing their scheme, RICO

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Defendants transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce various writings, signs, and signals.

87. In furtherance of their scheme, RICO Defendants used the wires and/or U.S. mails or private or commercial carriers to delivery documents and things to Plaintiffs or the Enterprises for the purposes of defrauding Plaintiffs, including, but not limited to the following:

a. Emails and website postings incorporating false, fraudulent and misleading statements regarding: the authority of Holdover Council Defendants; the purported disenrollment of Plaintiffs; eligibility of Plaintiffs for money and property as well as other tribal, state and federal benefits; directions, instructions and actions taken to deprive Plaintiffs of money and property as well as other tribal, state and federal benefits.

b. Wirings and/or mailings between and among RICO Defendants concerning: the scheme to defraud Plaintiffs of money and property as well as other tribal, state and federal benefits.

c. Funds transferred between Defendants with the intent that those funds be used to promote the carrying on of Defendants' scheme to defraud Plaintiffs of money and property as well as other tribal, state and federal benefits;

d. Electronic filing and service of court papers containing false and misleading statements intended to further Defendants' scheme to defraud money and property as well as other tribal, state and federal benefits.

88. The RICO Defendants used wire and mail communications in furtherance of their scheme to defraud Plaintiffs, in violation of 18 U.S.C. §§ 1341 and 1343, including but not

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

limited to, the following instances:

    a. Holdover Council Defendants notified Defendant King George by mail/wire on or about June 6, 2016, that they had disenrolled Plaintiff Rabang and to take specific action to defraud Ms. Rabang of her money and property.

    b. Holdover Council Defendants notified Defendant King George by mail/wire on or about June 6, 2016, that they had disenrolled Plaintiff Elizabeth Oshiro and to take specific action to defraud Ms. Oshiro of her money and property.

    c. Defendant King George mailed Plaintiff Rabang on June 3, 2016, a letter titled "IMPORTANT LEGAL NOTICE OF INVOLUNTARY DISENROLLMENT."

    d. Defendant King George mailed Plaintiff Elizabeth Oshiro on June 3, 2016, a letter titled "IMPORTANT LEGAL NOTICE OF INVOLUNTARY DISENROLLMENT."

    e. Holdover Council Defendants notified NIHA by mail/wire of its disenrollment of Plaintiff Rabang on June 6, 2016, and directed NIHA and/or Defendant Romero by mail/wire to take further action to deprive Ms. Rabang of her HUD MHOP home.

    f. Holdover Council notified NIHA by mail/wire of its disenrollment of Plaintiff Elizabeth Oshiro on June 6, 2016, and directed NIHA and/or Defendant Romero to take further action to deprive Ms. Oshiro of her HUD MHOP home.

    g. Defendant Romero mailed Plaintiff Elizabeth Oshiro a "30-day termination notice" some time between June 6 and July 11, 2016.

    h. Defendants Dodge and Armstrong mailed "Amended Notice of Hearing" to

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

Plaintiff Elizabeth Oshiro on July 11, 2016.

i.  Defendant Dodge mailed an "eviction order" to Plaintiff Elizabeth Oshiro on July 20, 2016.

j.  Defendant Dodge mailed or wired Defendant Romero a copy of an "eviction order" for Plaintiff Elizabeth Oshiro on July 27, 2016.

k.  Defendant Romero mailed a "14 DAY NOTICE TO VACATE" to Plaintiff Rabang on October 3, 2016.

l.  Holdover Council Defendants mailed Plaintiff Peato an "IMPORTANT LEGAL NOTICE OF DISENROLLMENT" on November 9, 2016.

m. Holdover Council Defendants mailed Plaintiff Aure an "IMPORTANT LEGAL NOTICE OF DISENROLLMENT" on November 9, 2016.

n.  Holdover Council Defendants mailed Plaintiff Olive Oshiro an "IMPORTANT LEGAL NOTICE OF DISENROLLMENT" on November 9, 2016.

o.  Holdover Council Defendants conducted telephonic disenrollment hearings on November 16, 17, and 18, 2016, with all Plaintiffs.

p.  Holdover Council Defendants notified NSSD by mail or wire of its disenrollment of Plaintiff Aure on November 28, 2016, and to take action to deprive Mr. Aure of money, property, and other benefits.

q.  Holdover Council Defendants notified NSSD by mail or wire of its disenrollment of Plaintiff Peato on November 28, 2016, and to take action to deprive Plaintiff Ms. Peato of money, property, or other benefits.

r.  Defendant Johnson mailed letter on November 30, 2016, titled "Notice of Discontinuation of Services" to all Plaintiffs that stated all Plaintiffs would be

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

deprived of healthcare services as a result of Holdover Council's actions.

s. Holdover Council caused TANF program director to mail Plaintiff Aure on December 1, 2016, that it would discontinue TANF benefits to Mr. Aure.

t. Holdover Council caused TANF program director to mail Plaintiff Peato on December 1, 2016, that it would discontinue TANF benefits to Ms. Peato.

u. Defendant Johnson caused a letter to be mailed to S.C., Plaintiff Aure's minor-aged son, informing S.C. that his application for HHS-funded Community Health Program benefits was denied "due to the recent disenrollment," on December 14, 2016.

v. Defendant Dodge mailed his "Order Following Show Cause Hearing" to Plaintiff Margretty Rabang on December 23, 2016.

w. Defendant Edwards caused Plaintiff Elizabeth Oshiro to be mailed a letter informing her that federal Johnson O'Malley education assistance for her son was denied "due to the recent disenrollment," on January 3, 2017.

89. RICO Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity.

90. RICO Defendants racketeering activities were multiple, continuous, and ongoing from about December of 2015, and remain ongoing.

91. RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deceive or defraud Plaintiffs. RICO Defendants knowingly and intentionally prepared documents, including but not limited to, resolutions, court papers, letters, notices, and other documents, and then knowingly and with the

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

intent to deceive Plaintiffs, caused those documents to be sent to Plaintiffs or entities that would further RICO Defendants' scheme to defraud.

**Money Laundering in Violation of 18 U.S.C § 1956(a)(1)(A)(i).**

92.     RICO Defendants have, on multiple occasions, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempt to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343.   RICO Defendants have, therefore, violated 18 U.S.C § 1956(a)(1)(A)(i).

**Summary.**

93.     Each RICO Defendant has engaged in multiple predicate acts, as described in paragraphs 33-81, 96-97, *supra*.  The conduct of each RICO Defendant described in paragraphs 33-81, 96-97, *supra*, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

94.     RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money and property through false representations, fraud, deceit, and other improper and unlawful means.  Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

95.     Plaintiffs were injured in their money and property by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

96.     RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.  Plaintiffs are the ultimate victims of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 25

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

RICO Defendants' unlawful enterprises. Plaintiffs have been and will continue to be injured in their money and property in an amount to be determined at trial.

97. Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

## SECOND CLAIM FOR RELIEF:
### Violations of Federal Civil RICO—Taking Control of an Enterprise, 18 U.S.C. § 1962(b)
### (RICO Defendants)

98. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

99. At all relevant times, RICO Defendants each were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

100. At all relevant times, the Tribe constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, the Tribe was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants each held a position in or were otherwise affiliated with the Tribe as well as participated in the operation, management, and directed the affairs of the Tribe. The Tribe, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. The Tribe exists separate and apart from the pattern of racketeering activity. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the Tribe.

101. Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

took control of the Tribe.

102.    At all relevant times, NITC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, NITC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all times relevant hereto, RICO Defendants held a position in or were otherwise affiliated with NITC as well as participated in the operation, management, and directed the affairs of NITC.  NITC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  NITC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of operating as the governing body of the Tribe.  RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NITC.

103.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NITC.

104.    At all relevant times, NTC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, NTC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all times relevant hereto, RICO Defendants participated in or were otherwise affiliated with the operation, management, and directed the affairs of NTC.  NTC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  NTC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing a forum for the Tribal community to resolve disputes.  RICO Defendants have had and do have legitimate

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

governmental business plans outside the pattern of racketeering activity related to NTC.

105. Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NTC.

106. At all relevant times, NIHA constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NIHA was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in or were otherwise affiliated with the operation, management, and directed the affairs of NIHA. NIHA, as alleged herein, was not limited to RICO Defendants' predicate acts and has business extending beyond RICO Defendants' racketeering activity. NIHA exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing housing-related services to the Tribal community. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHA.

107. Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NIHA.

108. At all times relevant hereto, NED constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NED was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NED. NED, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity.

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

NED exists separate and apart from the pattern of racketeering activity for the purpose of providing information regarding the enrollment process and criteria for enrollment, processing enrollment applications, and keeping records and statistics for all members of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NED.

109.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NED.

110.    At all times relevant hereto, NIHD constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NIHD was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NIHD. NIHD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. NIHD exists separate and apart from the pattern of racketeering activity for the purpose of providing information regarding the enrollment process and criteria for enrollment, processing enrollment applications, and keeping records and statistics for all members of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHD.

111.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NIHD.

112.    At all times relevant hereto, NEdD constitutes an "Enterprise" within the meaning

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NEdD was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NEdD. NEdD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. NEdD exists separate and apart from the pattern of racketeering activity for the purpose of providing quality educational opportunities for Tribal members. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NEdD.

113.    Through a pattern of racketeering activity alleged herein, including without limitation the RICO Defendants' violations of 18 U.S.C. §§ 1341 and 1343, RICO Defendants took control of NEdD.

114.    By controlling the Tribe, NITC, NIHA, NTC, NED, NIHD, and NEdD, RICO Defendants were able to cause these Enterprises to take actions to defraud Plaintiffs of money, property, and benefits of monetary value.

115.    As a direct and proximate result of RICO Defendants' taking control of the Tribe, the NITC, the NIHA, the NTC, the NED, the NIHD, and the NEdD, in violation of 18 U.S.C. § 1962, Plaintiffs were injured in their monies, property, and benefits of monetary value.

116.    Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

### THIRD CLAIM FOR RELIEF:
**Violations of Civil RICO—Conspiracy to Violate § 1962(c) of RICO, 18 U.S.C. § 1962(d)**
**(RICO Defendants)**

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

117.    Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

118.    At all relevant times, RICO Defendants each were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

119.    At all relevant times, the Tribe constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, the Tribe was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all times relevant hereto, RICO Defendants each held a position in or were otherwise affiliated with the Tribe as well as participated in the operation, management, and directed the affairs of the Tribe.  The Tribe, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  The Tribe exists separate and apart from the pattern of racketeering activity.  RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to the Tribe.

120.    At all relevant times, NITC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, NITC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all times relevant hereto, RICO Defendants held a position in or were otherwise affiliated with NITC as well as participated in the operation, management, and directed the affairs of NITC.  NITC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity.  NITC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

operating as the governing body of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NITC.

121. At all relevant times, NTC constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NTC was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in or were otherwise affiliated with the operation, management, and directed the affairs of NTC. NTC, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond RICO Defendants' racketeering activity. NTC exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing a forum for the Tribal community to resolve disputes. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NTC.

122. At all relevant times, NIHA constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, NIHA was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in or were otherwise affiliated with the operation, management, and directed the affairs of NIHA. NIHA, as alleged herein, was not limited to RICO Defendants' predicate acts and has business extending beyond RICO Defendants' racketeering activity. NIHA exists separate and apart from the pattern of racketeering activity for the legitimate governmental business purpose of providing housing-related services to the Tribal community. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHA.

123. At all times relevant hereto, NED constitutes an "Enterprise" within the meaning

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NED was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NED. NED, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. NED exists separate and apart from the pattern of racketeering activity for the purpose of providing information regarding the enrollment process and criteria for enrollment, processing enrollment applications, and keeping records and statistics for all members of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NED.

124. At all times relevant hereto, NIHD constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NIHD was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NIHD. NIHD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. NIHD exists separate and apart from the pattern of racketeering activity for the purpose of providing information regarding the enrollment process and criteria for enrollment, processing enrollment applications, and keeping records and statistics for all members of the Tribe. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NIHD.

125. At all times relevant hereto, NEdD constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all times relevant hereto, NEdD was engaged in, and/or

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 33

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c). At all times relevant hereto, RICO Defendants participated in the operation, management, and directed the affairs of NEdD. NEdD, as alleged herein, was not limited to RICO Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity. NEdD exists separate and apart from the pattern of racketeering activity for the purpose of providing quality educational opportunities for Tribal members. RICO Defendants have had and do have legitimate governmental business plans outside the pattern of racketeering activity related to NEdD.

126. RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

127. The conspiracy commenced at least as early as December of 2015, and remains ongoing.

128. The conspiracy's purpose was to defraud Plaintiffs of money, property, and benefits of monetary value by fraudulently depriving Plaintiffs of their membership in the Tribe.

129. Each RICO Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy include, but are not limited to, the acts set forth in paragraphs 33-81, 96-97, *supra.*

130. RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of RICO Defendants was necessary to allow the commission of this pattern of racketeering activity. RICO Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

131.     Each RICO Defendant knew about and agreed to facilitate the scheme to defraud Plaintiffs of their money, property, and other tribal, state and federal benefits of monetary value by fraudulently depriving them of their Tribal membership.  It was part of the conspiracy that RICO Defendants would commit a pattern of racketeering activity in the conduct of the affairs of the Tribe, NITC, NED, NIHA, NTC, NIHD, and NEdD, including the acts of racketeering set forth in paragraphs 33-81, 96-97, *supra*.

132.     As a direct and proximate result of RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprises, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their money and property, in an amount to be determined at trial.

133.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from Defendants as well as any other relief authorized by statute.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Award Plaintiffs such equitable injunctive and ancillary relief as may be necessary to avert the likelihood of Plaintiffs' irreparable injury or prohibit the illicit conduct described herein during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, a temporary restraining order and a preliminary injunctions;

2.     Award Plaintiffs a declaratory judgment;

3.     Order RICO Defendants to cease and desist from violating 18 U.S.C. § 1964;

4.     Enter judgment against RICO Defendants in an amount equal to three times the amount of damages to the United States has sustained because of RICO Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1964;

**GALANDA BROADMAN PLLC**
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509

1    5.    Restitution to Plaintiffs of all money, property, and benefits Plaintiffs were

2  unlawfully defrauded and deprived of by RICO Defendants;

3    6.    Award attorneys' fees and costs to Plaintiffs;

4    7.    Award damages to Plaintiffs in an amount to be determined at trial; and,

5    8.    Grant to Plaintiffs whatever other relief the Court may deem just and proper.

    DATED this 2nd day of February, 2017.

                                              GALANDA BROADMAN PLLC

                                              /s/ Gabriel S. Galanda
                                              Gabriel S. Galanda, WSBA #30331
                                              Anthony S. Broadman, WSBA #39508
                                              Ryan D. Dreveskracht, WSBA #42593
                                              Bree R. Black Horse, WSBA #47803
                                              P.O. Box 15416
                                              8606 35th Avenue NE, Suite L1
                                              Seattle, WA 98115
                                              PH: 206-557-7509
                                              FX: 206-299-7690
                                              gabe@galandabroadman.com
                                              anthony@galandabroadman.com
                                              ryan@galandabroadman.com
                                              bree@galandabroadman.com

                                              Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE FEDERAL RACKETEER INFLUENCED
AND CORRUPT ORGANIZATIONS ACT - 36

GALANDA BROADMAN PLLC
8606 35th Ave., NE, Suite L1
Mailing: PO Box 15146
Seattle, Washington 98115
(206) 557-7509