THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGRETTY RABANG, *et al.*,

        Plaintiffs,

    v.

ROBERT KELLY, JR., *et al.*,

        Defendants.

CASE NO. C17-0088-JCC

ORDER

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 34) and Plaintiffs' motion to continue Defendants' motion to dismiss (Dkt. No. 43), which Plaintiffs contend has been converted to a motion for summary judgment. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiffs' motion to continue and GRANTS in part and DENIES in part Defendants' motion to dismiss for the reasons explained herein.

**I.    BACKGROUND**

This section summarizes the facts as set forth in Plaintiffs' complaint, as is appropriate on a motion to dismiss.

This case arises out of the disenrollment of hundreds of Nooksack tribal members, and the subsequent Department of the Interior (DOI) and Bureau of Indian Affairs (BIA) decisions,

also at issue in a related case before this Court.[1] Plaintiffs in this matter are "purportedly disenrolled" members of the Nooksack Indian Tribe.[2] (Dkt. No. 7 at ¶ 9.) Defendants Kelly, George, Smith, Solomon, Johnson, and Canete are members of the Nooksack Indian Tribal Council that Plaintiffs classify as the "holdover council" as of March 24, 2016.[3] (*Id.* at ¶¶ 10–16.) Defendants Dodge, King George, Romero, Edwards, and Armstrong are other actors within Nooksack tribal leadership and agencies. (*Id.* at ¶¶ 17–21.)

Plaintiffs allege "Defendants' scheme to defraud Plaintiffs and the federal government began with fraudulently preventing elections for over half of the eight" Nooksack Indian Tribal Council seats. (*Id.* at ¶ 31.) The Nooksack Indian Tribal Council carries out tribal governance and consists of eight positions. (*Id.* at ¶ 26.) Five members constitute a quorum for the Council. (*Id.* at ¶ 27.)

The four-year terms for four seats on the Council were due to expire on March 24, 2016. (*Id.* at ¶ 28.) Defendants George, Smith, Johnson, and Canete held the expiring seats. (*Id.*) The Nooksack Constitution required elections for the four expiring seats be called within 90 days prior to the expiration of those offices. (*Id.* at ¶ 33.) On January 20, 2016, the holdover council Defendants announced at a Nooksack Community Council meeting that they had "cancelled" the February 20, 2016 primary election and the March 19, 2016 general election for the four expiring seats. (*Id.* at ¶ 36.) The holdover council Defendants wished to postpone the elections "until after disenrollment proceedings against Plaintiffs and over 275 other tribal members were complete." (*Id.*) On March 24, 2016, the four seats on the Nooksack Indian Tribal Council positions occupied by Defendants George, Smith, Johnson, and Canete lapsed. (*Id.*) Plaintiffs allege the holdover council Defendants took these actions to preserve their ability to "carry out their

---

[1] *Nooksack Indian Tribe v. Zinke*, C17-0219-JCC. The Court expresses no opinion as to the validity of the DOI decisions at this time. The Court's reference to these DOI letters as "decisions" does not express an opinion on whether these letters are "final agency decisions," also at issue in the related case.

[2] The Court expresses no opinion on the validity of the disenrollments by referring to these Nooksack tribal members as "disenrolled."

[3] The Court adopts this term, holdover council Defendants, for clarity, not as an expression of the Council's validity.

ORDER
PAGE - 2

scheme to defraud Plaintiffs of money, property, and benefits by depriving Plaintiffs of their Tribal membership, and to personally enrich themselves with hundreds of thousands of dollars in salaries, stipends, and other benefits through federal contracts and grants." (*Id.* at ¶ 31.)

On March 28, 2016, the holdover council Defendants terminated Nooksack Tribal Court Chief Judge Susan Alexander "as she was in the final stage of preparing a ruling to compel [Defendants] to call the election for the four now expired and vacant [Nooksack Indian Tribal Council] seats." (*Id.* at ¶ 39.) Plaintiffs allege she was "fraudulently replaced" by Defendant Dodge, previously the Nooksack Tribal Attorney. (*Id.*)

On April 29, 2016, Plaintiff Rabang filed suit in the Nooksack Tribal Court challenging actions taken by the holdover council Defendants. (*Id.* at ¶ 40.) Plaintiffs allege at "the direction of the holdover council Defendants and Defendant Dodge, and in an effort to further their scheme to defraud Plaintiffs, the [Nooksack Indian Tribal Court] never convened Plaintiff Rabang's" lawsuit. (*Id.*)

On June 3, 2016, Defendants passed resolutions to disenroll Plaintiffs Rabang and Oshiro from the Tribe. (*Id.* at ¶ 41.) On June 8, 2016, Defendants notified the Nooksack Indian Housing Authority "by mail or wire that it had disenrolled" Plaintiffs Rabang and Oshiro. (*Id.* at ¶ 43.)

In July 2016, Defendant Romero mailed a "30-day Termination Notice" to Plaintiff Oshiro. (*Id.* at ¶ 44.) The notice said the Nooksack Indian Housing Authority planned "to unilaterally terminate Ms. Oshiro's [Housing and Urban Development Mutual Help Occupancy Program]" home. (*Id.*) On July 11, 2016, Defendants Dodge and Armstrong caused an "Amended Notice of Hearing" regarding an eviction hearing to be mailed to Plaintiff Oshiro in an alleged "effort to defraud her of her home." (*Id.* at ¶ 45.) On July 20, 2016, Plaintiff Oshiro was evicted from her home as a result of Defendant Dodge's eviction order. (*Id.* at ¶ 46.)

On August 19, 2016, Defendant Romero "caused a 'Notice of Termination/Notice to Vacate' to be mailed to Plaintiff Rabang." (*Id.* at ¶ 47.) The notice said that the Nooksack Indian Housing Authority planned "to unilaterally terminate Ms. Rabang's [Housing and Urban

Development Mutual Help Occupancy Program]" home. (*Id.*)

On September 21, 2016, the Nooksack Tribal Court of Appeals noted in a decision that "the orders of this Court have been unlawfully ignored and the rule of law on the reservation . . . has completely broken down." (C17-0219-JCC, Dkt. No. 15 at 51.)[4]

On October 7, 2016, by Resolution No. 146a, the holdover council Defendants purported to create a new "Nooksack Supreme Court." (C17-0219-JCC, Dkt. No. 15 at 69.) The holdover council Defendants then proceeded to fill the new court with five of its council members, including Defendant Kelly as Chief Justice. (C17-0219-JCC, Dkt. No. 15 at ¶¶ 17–18.) The new Nooksack Supreme Court then proceeded to vacate 12 prior orders of the Nooksack Tribal Court of Appeals "as null and void." (C17-0219-JCC, Dkt. No. 15 at 72–80.)

On October 11, 2016, Plaintiff Rabang attempted to file a second lawsuit in the Nooksack Tribal Court against Defendant Romero. (Dkt. No. 7 at ¶ 49.) However, Defendant Dodge allegedly rejected Plaintiff Rabang's complaint and refused to convene her lawsuit. (*Id.*)

On October 17, 2016, Lawrence S. Roberts, DOI's Principal Deputy Assistant Secretary of Indian Affairs, issued a decision to the holdover council Defendants stating,

> In rare situations where tribal council does not maintain a quorum to take action pursuant to the Tribe's Constitution, the Department of the Interior does not recognize actions taken by the Tribe. This is one of those exceedingly rare situations. Accordingly, I am writing to inform you and the remaining Council members that *the [DOI] will only recognize those actions taken by the [Nooksack Indian Tribal] Council prior to March 24, 2016, when a quorum existed, and will not recognize any other actions taken since that time.*

(*Id.* at ¶ 50; C17-0219-JCC, Dkt. No. 15 at 8) (emphasis added).

However, also on October 17, 2016, the holdover council Defendants mailed Plaintiffs

---

[4] When deciding a motion to dismiss for lack of subject matter jurisdiction, the Court may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). Although this document is not filed in the case at hand, Intervenors 271 Nooksack Tribal Members filed it in the related case. *Nooksack Indian Tribe v. Zinke*, C17-0219-JCC, Dkt. No. 15. Intervenors in the related case are represented by the same attorneys as Plaintiffs in this case. Moreover, some Intervenors are also Plaintiffs in this matter. Therefore, the Court, when necessary, will consider the evidence in the related case to determine whether or not it has jurisdiction. However, the Court is limited to the four corners of the complaint when deciding if Plaintiffs failed to state a claim. *See* Fed. R. Civ. P. 12(d).

and over 275 other Tribal members a "Notice of Involuntary Disenrollment." (Dkt. No. 7 at ¶ 51.) On November 9, 2016, the holdover council Defendants mailed the disenrolled members a "Legal Notice of Disenrollment" and stated that a disenrollment "meeting date" had been set via teleconference for November 16, 17, or 18, 2016. (*Id.* at ¶ 55.)

On November 14, 2016, Principal Deputy Assistant Secretary Roberts issued a second decision to the holdover council Defendants reiterating that pursuant to the

> Nation-to Nation relationship, the [DOI] will not recognize actions taken by you and the current Tribal Council members without a quorum consistent with the Nooksack Tribe's Constitution. . . . Accordingly, until a Council is seated through an election consistent with tribal law . . . , we will not recognize any "referendum election" including the purported results posted on the Tribe's Facebook page on November 4, 2016, claiming to disenroll current tribal citizens. . . . This further includes any election results from the Tribal Council Primary Election scheduled for December 17, 2016, or the Tribal Council Regular Election scheduled for January 21, 2017.

(*Id.* at ¶ 56; C17-0219-JCC, Dkt. No. 15 at 11.) The letter continues that the BIA "stands ready to provide technical assistance and support to the Tribe to carry out elections open to 'all enrolled members of the Nooksack Tribe, eighteen years of age or over.'" (*Id.*)

On November 16, 17, and 18, 2016, the holdover council Defendants "conducted 10-minute 'meetings' via teleconference to accomplish the purported disenrollment of Plaintiffs." (Dkt. No. 7 at ¶ 57.) On November 22, 2016, the holdover council Defendants "purportedly passed over 275 Nooksack Indian Tribal Council Resolutions to disenroll Plaintiffs and over 275 other Tribal members." (*Id.* at ¶ 58.) Based on their disenrollments, Plaintiffs lost many services provided to Nooksack Indian Tribe members, including health care services, Temporary Assistance for Needy Families funding, and education assistance. (*See, e.g.*, *id.* at ¶¶ 60–62, 65, 66, 70.) Plaintiffs were notified of their loss of services by mail. (*Id.*)

On December 23, 2016, Principal Deputy Assistant Secretary Roberts issued a third decision to the holdover council Defendants. He reiterated the fact that the Nooksack Indian Tribal Council continues to operate without a quorum and "therefore lacks authority to conduct business on behalf of the tribe." (*Id.* at ¶ 69; C17-0219-JCC, Dkt. No. 15 at 14.) The letter

continues,

> As we previously notified you, the actions by you and two members who have exceeded their term of office on the Tribal Council to anoint yourselves as the Tribe's Supreme Court were taken without a quorum and without holding a valid election consistent with the Tribe's constitution. . . . *Any actions taken by the Tribal Court after March 24, 2016, including so-called tribal court actions and orders, are not valid for purposes of Federal services and funding.*

(*Id.*) (emphasis added).

On February 2, 2017, Plaintiffs filed their amended complaint, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). (Dkt. No. 7.) Defendants Kelly, George, Smith, Solomon, Johnson, Canete, King George, Romero, Edwards, and Armstrong filed this motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.[5] (Dkt. No. 34.) Plaintiffs also ask the Court to continue the motion to dismiss, as it is purportedly a motion for summary judgment. (Dkt. No. 43.)

## II. DISCUSSION

### A. Motion to Continue (Dkt. No. 43)

Pursuant to Federal Rule of Civil Procedure 12(d), if "on a motion *under Rule 12(b)(6)* or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." (Emphasis added.) However, when determining the existence of subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider [other] facts." *Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

Here, Defendants move to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim, pursuant to Rule 12(b)(6). Defendants submitted over 100 pages of exhibits. (*See* Dkt. Nos. 35, 36.) Defendants contend the exhibits are in support of their Rule 12(b)(1) motion to dismiss. (Dkt. No. 51 at 2–5.) Plaintiffs argue that the submission

---

[5] Defendant Dodge has also filed a separate motion to dismiss. (Dkt. No. 30.)

1 of exhibits itself triggers Rule 12(d) and the motion has been converted to a motion for summary
2 judgment. (Dkt. No. 57 at 1–2.) However, Rule 12(d) is explicit: a *Rule 12(b)(6) motion to*
3 *dismiss* is converted to a motion for summary judgment if information outside the complaint is
4 presented and not excluded. Rule 12(d) does not apply to Rule 12(b)(1) motions to dismiss. The
5 Court concludes that all of the exhibits presented are, in fact, used as support for the Rule
6 12(b)(1) motion to dismiss. Therefore, the Court may consider them in that context; however,
7 when evaluating the 12(b)(6) motion, the Court will, as appropriate, consider only the allegations
8 in the complaint. Plaintiffs' motion to continue is DENIED.

### B. Motion to Dismiss (Dkt. No. 34)

Defendants argue the Court lacks subject matter jurisdiction over this matter and, in the alternative, Plaintiffs fail to state a claim. (Dkt. No. 34 at 1–2.)

1. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction. Jurisdiction is a threshold separation of powers issue, and may not be deferred until trial. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In reviewing a facial attack, the Court assumes all material allegations in the complaint are true. *Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).

Defendants' primary argument is that this case is "nothing more than an intra-tribal dispute inartfully pled as a RICO suit," and therefore the Court lacks subject matter jurisdiction over such internal tribal matters. (Dkt. No. 34 at 1.) The issue at the heart of this case is the legitimacy of the internal tribal actions taken by the Nooksack tribal leadership. These actions have been declared illegitimate by the DOI. Thus, the question of subject matter jurisdiction heavily depends on the precedential weight of those DOI decisions on this Court.

The Supreme Court has "repeatedly recognized the Federal Government's longstanding

policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). Unless surrendered by the tribe, or abrogated by Congress, tribes possess inherent and exclusive power over matters of internal tribal governance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989); *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983); *Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1185 (E.D. Cal. 2009). "[P]roper respect for tribal legal institutions requires that they be given a full opportunity to consider the issues before them and to rectify any errors." *LaPlante*, 480 U.S. at 16 (internal quotations and citations omitted); *see Johnson v. Gila River Indian Cmty.*, 174 F.3d 1032, 1035 (9th Cir. 1999) (finding when federal and tribal courts have concurrent jurisdiction over a claim, "considerations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court").

However, there are four recognized exceptions to the requirement for exhaustion of tribal court remedies. Federal courts have jurisdiction where: "(1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; (3) exhaustion would be futile because of the lack of adequate opportunity to challenge the [tribal] court's jurisdiction; or (4) it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s[6] main rule." *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013). Generally, the third exception "applies narrowly to only the most extreme cases." *Id.* at 1203. In *Johnson*, the Ninth Circuit found that exhaustion was not required where it would be futile to file a claim because the tribal court is not functioning. 174 F.3d at 1035–36. The court found that a tribal appellate court was non-functioning where a plaintiff had corresponded with an appellate tribunal for four months and had not received any meaningful reply or briefing schedule. *See id.*; *see also Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 622 (8th Cir. 1997) (exhaustion not required where there was no functioning tribal court)).

---

[6] *Montana v. United States*, 450 U.S. 544 (1981).

Here, the Nooksack judiciary is operating with questionable authority based on the facts and exhibits submitted. The facts demonstrate that the holdover council Defendants acted without a quorum when they altered the Nooksack judiciary judges and structure. (*See* Dkt. No. 7 at ¶ 39) (terminating Judge Alexander and replacing her with Defendant Dodge); (Dkt. No. 7 at ¶¶ 40, 49) (Defendant Dodge declining to convene Plaintiff Rabang's lawsuit, twice); (C17-0219-JCC, Dkt. No. 15 at 51) (Nooksack Tribal Court of Appeals noting the rule of law "has completely broken down"); (C17-0219-JCC, Dkt. No. 15 at 72–80) (creating the Nooksack Supreme Court, appointing Defendant Kelly as Chief Judge, and invalidating Nooksack Tribal Court of Appeals orders). These actions taken without a quorum could mean the Nooksack judiciary is non-functioning. The Court is very aware and respects the fact that these are intra-tribal matters and are generally not for federal courts to review or preside over. However, based on Ninth Circuit case law like *Johnson*, these actions alone could potentially be enough to find a lack of opportunity to challenge the tribal court's jurisdiction because they were done without a quorum.

Nevertheless, and most importantly for this Court's jurisdiction, the Court must also consider the three DOI decisions invalidating these judicial actions. It is undisputed that the DOI refused to recognize actions taken by the holdover council Defendants after March 24, 2016, in three separate and unambiguous decisions. (Dkt. No. 7 at ¶ 50, 56, 69.) This includes all of the actions listed above involving the Nooksack judiciary. The validity of the DOI decisions is currently before this Court in a related case, *Nooksack Indian Tribe v. Zinke*, C17-0219-JCC. However, this Court's jurisdiction over this matter largely turns on what effect the DOI decisions have on the Court in deciding this motion to dismiss. Namely, the Court must decide if the DOI decisions to invalidate the enumerated actions above guides the Court to find a "lack of adequate opportunity to challenge the [tribal] court's jurisdiction." *Grand Canyon Skywalk*, 715 F.3d at 1200.

A recent Second Circuit case is instructive. In *Cayuga Nation v. Tanner*, 824 F.3d 321

(2d Cir. 2016), the court had to decide if BIA recognition of tribal leadership had any effect on subject matter jurisdiction. Recognizing "deference to the Executive Branch is appropriate in addressing this question," the Second Circuit noted the "BIA has special expertise in dealing with Indian affairs, and we have previously indicated that the BIA's decision to recognize a tribal government" can be outcome determinative. *Cayuga Nation*, 824 F.3d at 328 (citing *Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 938–39 (D.C. Cir. 2012) (dismissing a lawsuit brought by one group on behalf of the tribe after the Executive Branch recognized a different group as the tribe's governing body); *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 712–13 (2d Cir. 1998) (noting that the "BIA's determination that [an individual] does not represent the Nation may well moot plaintiffs' claims")). Ultimately, the Second Circuit held "a recognition decision from the BIA is sufficient for us to find that the recognized individual has the authority to initiate a lawsuit on behalf of a tribe." *Cayuga Nation*, 824 F.3d at 328. The Second Circuit concluded that deference to a BIA decision was appropriate and adopted the decision's conclusion. *Id.* at 328–30.

This holding is consistent with an Eighth Circuit decision where the court determined that a BIA recognition and decision is made only on "an interim basis" and once "the dispute is resolved through internal tribal mechanisms, the BIA must recognize the tribal leadership embraced by the tribe itself." *Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Mississippi in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010); *accord Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior*, 837 F. Supp. 2d 1184, 1191 (D. Nev. 2011). Although the sovereign nature of American Indian tribes cautions the Secretary of the Interior not to exercise freestanding authority to interfere with a tribe's internal governance, the Secretary has the power to manage "*all* Indian affairs and [ ] *all* matters *arising out of Indian relations.*" 25 U.S.C. § 2 (emphasis added).

Based on this line of cases, the Court concludes deference is owed to the DOI decisions and this Court has jurisdiction in the interim period where the tribal leadership is considered

inadequate by the DOI. The DOI refused to recognize the actions taken by the holdover council Defendants since March 24, 2016. (Dkt. No. 7 at ¶ 50, 56, 69.) Moreover, the DOI has not recognized the Nooksack Indian Tribal Council allegedly elected in early 2017. (C17-0219-JCC, Dkt. No. 15 at 11.) Therefore, the decisions taken after March 24, 2016, are not valid at this time and on an interim basis because there is no recognized tribal leadership. The DOI's decisions to invalidate actions taken by Defendants, namely those related to the Nooksack judiciary, indicate that Plaintiffs have a lack of adequate opportunity to challenge the tribal court's jurisdiction.

This Court's jurisdiction over this matter is not permanent or inflexible. For instance, the DOI decisions in this matter are being challenged in the related case, *Nooksack Indian Tribe v. Zinke*, C17-0219-JCC. If the Court there determines the DOI decisions were invalid, it is possible that this Court will not have jurisdiction over this matter. Moreover, if the DOI and BIA recognize tribal leadership after new elections, this Court will no longer have jurisdiction and the issues will be resolved internally. *See Attorney's Process & Investigation Servs., Inc.*, 609 F.3d at 943.

Defendants also argue that sovereign immunity bars Plaintiffs' claims. Tribal sovereign immunity extends to individual tribal officers who are acting in their representative capacity and within the scope of their authority. *Stock West Corp. v. Taylor*, 942 F.2d 655, 664 (9th Cir. 1991). However, the Supreme Court's recent decision on this issue is dispositive. The Court held "when a suit is brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." *Lewis v. Clarke*, No. 15-1500, 581 U.S. ____ (April 25, 2017). Plaintiffs bring these allegations against Defendants in their personal capacities. (Dkt. No. 7 at ¶ 22.) Therefore, sovereign immunity is not a jurisdictional bar in this case.

The Court also acknowledges that it has no place deciding how the Nooksack Indian Tribe determines tribal membership and the benefits that derive from such membership. However, these are very rare circumstances. The DOI has found such disenrollment decisions to

be invalid due to a lack of quorum, and the DOI decisions stand during the interim until the DOI and BIA recognize a newly elected Tribal Council or the DOI decisions are invalidated. Under this set of facts, this Court has jurisdiction. Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.

2. Failure to State a Claim

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The plaintiff is obligated to provide grounds for her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A dismissal under Rule 12(b)(6) "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

Plaintiffs allege that Defendants "each of whom are persons associated with, or employed by, the Tribe" and its agencies "did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the conduct, management, or operation of the affairs of the Tribe" and

its agencies, and violated 18 U.S.C. § 1962(c) "through a pattern of racketeering activity . . . through multiple instances of mail fraud and wire fraud . . . and money laundering." (Dkt. No. 7 at ¶ 84.) Plaintiffs also allege that Defendants conspired to violate § 1962(c), in violation of § 1962(d).[7] (*Id.* at ¶ 126). Plaintiffs bring these allegations against Defendants in their personal capacities.[8] (*Id.* at ¶ 22.)

      a.    *Violation of § 1962(c): Conduct of a RICO Enterprise*

To establish the elements of a civil RICO claim, Plaintiffs must allege, with particularity, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (internal citations omitted); 18 U.S.C. § 1962(c). "In addition, the plaintiff only has [RICO] standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Imrex*, 473 U.S. at 496.

Conduct: RICO requires proof that each defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). "RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in *directing* the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis added). All Defendants, except for Defendant Armstrong, are either members of the holdover council or entities subordinate to, or otherwise under the control of, the holdover council. (Dkt. No. 7 at ¶¶ 15, 17–20, 26.) Plaintiffs have alleged extensive facts that Defendants Kelly, George, Smith, Solomon, Johnson, Canete,

---

[7] Plaintiffs also allege Defendants violated § 1962(b) by taking control of an enterprise. (Dkt. No. 7 at ¶ 101.) However, Defendants do not seem to address this claim in their motion to dismiss. Therefore, the Court will not address it in this order.

[8] Defendants argue that a governmental entity such as the Nooksack Indian Tribal Council cannot be capable of forming the criminal intent necessary to support predicate RICO offenses. (Dkt. No. 34 at 15.) However, the claims are not against the Nooksack Indian Tribal Council, but the individuals of the Nooksack Indian Tribal Council. Therefore, this argument is without merit.

ORDER
PAGE - 13

King George, Romero, and Edwards directed or participated, either directly or indirectly, in the alleged enterprise. (*See* Dkt. No. 48 at 5–7) (collecting the complaint conduct citations for each individual Defendant).

However, Defendant Armstrong occupies a different position as the Nooksack Tribal Attorney. (*See* Dkt. No. 7 at ¶ 21.) Performance of limited legal services may not constitute "operation and management" of an enterprise. *See Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). In *Baumer*, an attorney's preparation of two letters, preparation of a partnership agreement, and assistance in a bankruptcy proceeding was not sufficient to meet the conduct or participation requirements for RICO liability because the attorney's limited and sporadic involvement in the scheme did not begin until late in the enterprise. *Id.* at 1344–45.

Here, Defendant Armstrong serves "as legal counsel for the Tribe, and all other named subordinate departments of the Tribe." (Dkt. No. 7 at ¶ 21.) Plaintiffs allege that Defendant Armstrong used the Nooksack Indian Housing Authority and Nooksack Tribal Court to defraud Plaintiffs Rabang and Oshiro of their homes, mailed an "Amended Notice of Hearing" regarding eviction to Plaintiff Oshiro, filed an unlawful detainer action against Plaintiff Rabang, and continues to "aggressively pursue" Plaintiff Rabang in the Nooksack Tribal Court. (*Id.* at ¶¶ 43, 45, 53, 71.) However, as in-house counsel for the Nooksack Indian Tribe, Defendant Armstrong was providing legal services. Plaintiffs do not allege facts that Defendant Armstrong *directed* the alleged enterprise. *See Reves,* 507 U.S. at 179. Therefore, the Court DISMISSES the § 1962(c) claim against Defendant Armstrong.

Enterprise: An enterprise must be "engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(c). "A minimal effect on interstate commerce satisfies this jurisdictional element." *United States v. Bagnariol*, 665 F.2d 877, 892 (9th Cir. 1981). In many cases, legitimate government organizations can be the enterprise required for RICO. *Id.* at 893 (collecting and summarizing cases). Plaintiffs allege that Defendants used an instrumentality of interstate commerce, the U.S. Postal Service, as part of the enterprise. (Dkt. No. 7 at ¶¶ 84–

89.) Defendants assert that the alleged enterprise had no effect on interstate commerce because all of the mailings were intrastate. (Dkt. No. 53 at 10.) This is a complete misstatement of the law. *United States v. Lopez*, 514 U.S. 549, 558 (1995) (concluding Congress has the power to regulate interstate commerce, which includes the instrumentalities of interstate commerce). Therefore, Plaintiffs have met this burden because using the U.S. Postal Service as part of an enterprise has an effect on interstate commerce.

<u>Racketeering Activities</u>: Plaintiffs allege Defendants performed racketeering activities by engaging in mail and wire fraud, (Dkt. No. 7 at ¶¶ 85–91), and money laundering (*id.* at ¶ 92).

*Mail and Wire Fraud*: RICO classifies "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses" by mail and wire communications as a racketeering activity. 18 U.S.C. §§ 1341, 1343. The Ninth Circuit has "declined to announce a black-letter rule that reliance is the only way plaintiffs can establish causation in a civil RICO claim predicated on mail or wire fraud." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 363 (9th Cir. 2005). "It is well settled that, to maintain a civil RICO claim predicated on mail [or wire] fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused the injury." *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 664 (9th Cir. 2004).

Defendants argue Plaintiffs have failed to show that they relied on Defendants' alleged misrepresentations. (Dkt. No. 34 at 18–19.) However, Plaintiffs have alleged that Defendants' alleged mail and wire fraud proximately caused their injury. They allege "Defendants devised or intended to devise a scheme to defraud Plaintiffs of money, property, and other tribal state, and federal benefits of monetary value by depriving Plaintiffs of their tribal membership by means of false of fraudulent pretenses and representations." (Dkt. No. 7 at ¶ 85.) They have alleged with particularity specific times, dates, and places when the alleged mail and wire fraud occurred. (*Id.* at ¶¶ 41–45, 47–48, 51, 54–55, 57, 60–62, 65–66, 68, 70, 88.) They have also alleged Defendants' specific intent to defraud Plaintiffs. (*Id.* at ¶¶ 85, 87, 89, 91.) Therefore, Plaintiffs

have met their burden as to mail and wire fraud.

*Money Laundering*: The Court agrees with Defendants that there are no facts within the complaint that Defendants have engaged in money laundering beyond the conclusory allegation that they have. (*See* Dkt. No. ¶ 92.) Moreover, Plaintiffs do not address this issue in their opposition. Pursuant to Local Civil Rule 7(b)(2), if a party fails to oppose a motion or an issue in a motion, "such failure may be considered by the court as an admission that the motion has merit." Therefore, Defendants' motion to dismiss this claim is GRANTED and the money laundering RICO claim is DISMISSED.

Pattern of Racketeering: A pattern of racketeering is demonstrated by "at least two acts of racketeering activity" that are related and occur within 10 years of one another. 18 U.S.C. § 1961(5); *see H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238–39 (1989). Racketeering activities are "related" if the conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (citing *H.J.*, 492 U.S. at 240).

Defendants argue that the alleged scheme "was a single, continuous series of events that occurred over a limited period of time," and therefore there is no pattern. (Dkt. No. 34 at 20.) Plaintiffs counter that the alleged pattern is ongoing and they have alleged at least 35 predicate acts within a 12-month period. (Dkt. No. 48 at 10) (citing Dkt. No. 7 at ¶¶ 42–45, 47–48, 51, 54–55, 57, 61–62, 66, 68, 70). First, the fact that the alleged acts occurred over a limited period of time does not automatically mean there is no pattern. In fact, acts committed in close succession could be a strong indication of how interrelated they are. Second, Plaintiffs have alleged numerous racketeering activities done with the same alleged purpose, to defraud Plaintiffs of money and property; the same alleged victims, Plaintiffs; and the same alleged participants, Defendants. These were not isolated events. Moreover, according to Plaintiffs, the efforts to defraud remain ongoing. (*See id.* at ¶ 71.) As such, Plaintiffs have alleged enough facts with

particularity to demonstrate a pattern of racketeering.

Plaintiffs' Injury: The Ninth Circuit has held that "RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'" *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) (quoting *Oscar v. Univ. Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Id.* at 900 (holding a false imprisonment that caused the victim to lose employment and employment opportunities was an injury within the meaning of RICO).

Defendants argue Plaintiffs' claims fail because "they have failed to document the amount of damages to which each plaintiff claims to be entitled." (Dkt. No. 34 at 22–23.) However, a specific monetary amount of damages is not necessary at this point. Plaintiffs have alleged financial losses in the form of their investments in their homes and federal funds, healthcare benefits, and federal education money. (*See, e.g.*, Dkt. No. 7 at ¶¶ 44–47, 65, 60–62, 66, 70.) They also allege "Defendants harmed and continue to harm their intervening legal entitlements to benefits, which caused additional financial losses." (Dkt. No. 48 at 11). Therefore, Plaintiffs have alleged enough facts with particularity to demonstrate injury.[9]

In conclusion, Plaintiffs have sufficiently alleged mail and wire fraud claims against Defendants, except with respect to Defendant Armstrong. They fail to meet their burden as to the money laundering claims against all Defendants.

        b.    *Violation of § 1962(d): Conspiracy to violate § 1962(c)*

RICO makes it "unlawful for any person to conspire to violate" § 1962(c). 18 U.S.C. § 1962(d). "The essence of a RICO conspiracy is not an agreement to commit racketeering acts, but an agreement to conduct or participate in the affairs of an enterprise through a pattern of

---

[9] Defendants also argue that Defendants did not derive any income from the alleged pattern of racketeering. (Dkt. No. 34 at 21–22.) However, this element is required for violations of 18 U.S.C. § 1962(a), which is not alleged in this complaint. Therefore, the Court will not consider this argument.

racketeering." *United States v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir. 1982). "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense." *Salinas v. United States*, 522 U.S. 52, 63 (1997). The agreement need not be explicit and "inferences of the existence of such an agreement may be drawn if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980) (discussing conspiracy in general).

Plaintiffs allege that Defendants "knew about and agreed to facilitate the scheme to defraud Plaintiffs of their money, property, and other tribal, state, and federal benefits of monetary value by fraudulently depriving them of their Tribal membership." (Dkt. No. 7 at ¶ 131.) Defendants claim that such conclusory allegations do not meet the pleading with particularity burden. (Dkt. No. 34 at 23.) However, Plaintiffs have alleged that Defendants, acting in concert and with a common purpose on specific dates, conspired together to defraud Plaintiffs by taking the actions enumerated throughout this order. (*See, e.g.*, Dkt. No. 7 at ¶¶ 31, 35–36, 38–39, 45, 49, 51, 53–55, 57, 59–62, 65–66, 70–72.) Plaintiffs' numerous allegations "raise an inference of an agreement that is at least plausible." *In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 2010 WL 2640254, at *5 (W.D. Wash. June 25, 2010) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1056 (9th Cir. 2008)). Therefore, Defendants' motion to dismiss the RICO conspiracy claim is DENIED.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to continue (Dkt. No. 43) is DENIED and Defendants' motion to dismiss (Dkt. No. 34) is GRANTED in part and DENIED in part. The Court DISMISSES the § 1962(c) money laundering claim and all § 1962(c) claims against Defendant Armstrong. However, these claims are dismissed without prejudice because dismissal with prejudice is "improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher*

1 | *Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).

DATED this 26th day of April 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE