1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MARGRETTY RABANG, *et al.*,                    CASE NO. C17-0088-JCC

10
                              Plaintiffs,        ORDER

11                        v.

12     ROBERT KELLY, JR., *et al.*,

13                              Defendants.

14

15          This matter comes before the Court on Plaintiffs' motion to compel (Dkt. No. 95),

16     Defendants' motion to quash subpoena *duces tecum* (Dkt. No. 98), motion to strike notices of

17     depositions and for protective order (Dkt. No. 125), and Objector Nooksack Indian Tribe of

18     Washington's motion to quash (Dkt. No. 124). Having thoroughly considered the parties'

19     briefing and the relevant record, the Court finds oral argument unnecessary and hereby ORDERS

20     a stay of proceedings for the reasons explained herein.

21     **I.     BACKGROUND**

22          This case arises out of the disenrollment of hundreds of Nooksack tribal members, and

23     the subsequent Department of the Interior (DOI) and Bureau of Indian Affairs (BIA) decisions,

24     also at issue in a related case before this Court.[1] Plaintiffs in this matter are "purportedly

25     _____

26          [1] *Nooksack Indian Tribe v. Zinke*, C17-0219-JCC. The Court, on joint motion of the
       parties, issued a 120-day stay of proceedings on June 27, 2017. (C17-0219-JCC, Dkt. No. 51.)

disenrolled" members of the Nooksack Indian Tribe.[2] (Dkt. No. 64 at 4.) Defendants are members of the Nooksack tribal leadership, tribal court, and other tribal agencies. (*Id.* at 4–6.) The Court has provided a detailed factual background of this case in previous orders. (*See* Dkt. Nos. 62 at 1–6; 63 at 1–2.) The following is a procedural history of the case relevant to the motions pending before the Court.

  1.  *Plaintiffs' Motion to Compel*

On August 24, 2017, Plaintiffs filed a motion to compel in which they ask the Court to order: (1) Defendant Dodge to produce all responsive documents consistent with Federal Rule of Civil Procedure 34; (2) Defendants Armstrong, Canete, and Kelly Jr. to respond to discovery requests; and (3) Five non-party Nooksack Tribal employees to comply with the Plaintiffs' subpoena *duces tecum*. (Dkt. No. 95 at 2.) Dodge resists discovery on various grounds. (*See generally* Dkt. No. 108.) Armstrong, Canete, and Kelly Jr. argue that they do not have to respond to the discovery requests because of their pending interlocutory appeal. (Dkt. No. 102 at 4–5.)

  2.  *Defendants' Motion to Quash Subpoena Duces Tecum*

On August 24, 2017, the Kelly Defendants[3] filed a motion to quash a subpoena *duces tecum* served by Plaintiffs on Defendants' counsel, Schwabe, Williamson & Wyatt, P.C. ("Schwabe"). (Dkt. No. 99 at 7–10.) Plaintiffs sought documents purportedly related to Dodge's involvement in the Kelly Defendants' alleged scheme to defraud Plaintiffs. (Dkt. No. 104 at 2–3.) The Kelly Defendants argue that the subpoena sought information that was attorney-client privileged, work product, and otherwise confidential. (Dkt. No. 98 at 3–4.)

  3.  *Defendants' Motion to Strike Depositions and for Protective Order*

On October 10, 2017, the Kelly Defendants filed a motion to strike notices of deposition for Defendants Canete, Armstrong, and Kelly. (Dkt. No. 125 at 4–6.) They also sought a

---

[2] The Court expresses no opinion on the validity of the disenrollments by referring to these Nooksack tribal members as "disenrolled."

[3] The Court uses the term "Kelly Defendants" in this order to refer to all of the Defendants except Raymond Dodge Jr.

ORDER
PAGE - 2

protective order precluding discovery against the Kelly Defendants while their interlocutory

appeal is pending. (*Id*.) Plaintiffs argue that they are entitled to discovery from the Kelly

Defendants pertaining to issues raised in Defendant Dodge's pending motion for summary

judgment. (Dkt. No. 127 at 2.)

        *4.   Objector Nooksack Tribe's Motion to Quash*

        On October 17, 2017, the Nooksack Indian Tribe, appearing as a non-party objector, filed

a motion to quash subpoenas delivered by Plaintiffs on three tribal employees seeking

depositions and tribal documents. (Dkt. No. 124 at 2.) The Tribe asserts that the employees are

insulated from the discovery requests based on the doctrine of tribal sovereign immunity. (*Id*.)

Plaintiffs argue they are entitled to this discovery under the Federal Rules. (Dkt. No. 127 at 4–5.)

        *5.   Nooksack Tribe's Entry into a Memorandum of Agreement with DOI*

        On August 28, 2017, Defendant Kelly, in his capacity as Chairman of the Nooksack

Tribal Council, entered into a Memorandum of Agreement (MOA) with Michael Black, Acting

Assistant Secretary – Indian Affairs, on behalf of DOI. (Dkt. No. 117-1 at 8–12.) The MOA's

purpose is to establish a process under which DOI recognizes the Nooksack Tribal Council as the

governing body of the Nooksack Indian Tribe. (*Id*. at 8.) Under the MOA, Kelly is required to

conduct a Nooksack Tribal Council election within 120 days of signing the agreement. (*Id.*)

        The MOA reiterates that DOI only recognizes actions taken by the Nooksack Indian

Tribal Council prior to March 24, 2016 when a quorum existed. (*Id.*) It further states that "all

tribal members purportedly disenrolled since March 24, 2016 are members of the Nooksack

Indian Tribe, entitled to vote in Tribal Elections, to run for Tribal office, and to receive the

benefits of Tribal membership equally with all other Tribal members." (*Id*. at 9–10.) Upon

certification of the election results, DOI will issue a letter granting full recognition of the

Nooksack Indian Tribal Council as the valid governing body of the Nooksack Tribe. (*Id*. at 8.)

        On September 19, 2017, the Court issued a *sua sponte* order for briefing regarding the

MOA (Dkt. No. 115). The Court ordered the parties to explain the effect of the MOA, if any, on

ORDER
PAGE - 3

1  the Court's continued jurisdiction over the lawsuit, as well as the effect of the MOA, if any, on

2  the pending discovery motions and Defendant Dodge's pending motion for summary judgment.

3  (*Id*.) Being fully advised of the parties' briefing, the Court issues the following order.

4  **II.     DISCUSSION**

5       **A.  The Court's Subject Matter Jurisdiction**

6          When the Court initially held that it had subject matter jurisdiction over this case, it

7  acknowledged that its "jurisdiction [] is not permanent or inflexible." (Dkt. No. 62 at 11.) That is

8  because, as a general rule, Indian tribes possess inherent and exclusive power over matters of

9  internal tribal governance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989);

10  *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983). The determination of tribal

11  membership has long been recognized as a matter of internal tribal governance to be determined

12  by tribal authorities. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72, n.32 (1978); *Williams v.*

13  *Gover*, 490 F.3d 785, 790 (9th Cir. 2007).

14          At the heart of Plaintiffs' RICO claims are questions about their membership in the

15  Nooksack Indian Tribe and the actions taken by tribal leadership to renounce their membership.

16  (Dkt. No. 64 at 7) (Defendants carried out "their scheme to defraud Plaintiffs of money,

17  property, and benefits by depriving Plaintiffs of their Tribal membership . . . ."). Resolution of

18  these claims would necessarily require the Court to interpret Nooksack tribal law, and address

19  the underlying enrollment dispute—subjects over which federal courts normally do not have

20  jurisdiction. *See e.g.*, *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir. 1985) ("disputes

21  involving questions of interpretation of the tribal constitution and tribal law [are] not within the

22  jurisdiction of the district court.")

23          In exercising jurisdiction, the Court drew an analogy to the tribal exhaustion rule, which

24  holds that matters of internal tribal governance should not be adjudicated by federal courts unless

25  and until tribal remedies have been exhausted. (Dkt. No. 62 at 7–8); *see e.g., Grand Canyon*

26  *Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013). The Court relied on

a narrow exception to the exhaustion rule, which provides for jurisdiction where "exhaustion would be futile because of the lack of adequate opportunity to challenge the [tribal] court's jurisdiction." *Grand Canyon Skywalk*, 715 F.3d at 1200. The Court gave deference to several DOI decisions that refused to recognize decisions made by the Nooksack Tribal Council and Judiciary, and concluded that Plaintiffs lacked an adequate opportunity to challenge the tribal court's jurisdiction. (Dkt. No. 62 at 11.) At the same time, the Court acknowledged that its exercise of jurisdiction was for "the interim period where the tribal leadership is considered inadequate by the DOI." (*Id*. at 10–11.) The Court stated that "if the DOI and BIA recognize tribal leadership after new elections, this Court will no longer have jurisdiction and the issues will be resolved internally." (*Id*. at 11.)

The MOA entered between Kelly and DOI initiates a process by which the latter will once again recognize Nooksack Tribal leadership. (Dkt. No. 117-1 at 8.) As a result, the outcome of the upcoming Tribal election and corresponding action by DOI could affect the Court's continued subject matter jurisdiction over Plaintiffs' lawsuit. Plaintiffs argue that the MOA does not affect the Court's jurisdiction to continue hearing motions in the interim period because the Nooksack government and judiciary, as noted by DOI's prior opinion letters, are still "non-functioning." (Dkt. No. 116 at 19.) Defendants argue that the Court should dismiss Plaintiffs' claims because the MOA is evidence that DOI has recognized that the Tribe now has a functioning government. (Dkt. No. 120 at 4.) The Court does not adopt either of the courses recommended by the parties. Instead, the Court ORDERS a stay of proceedings, to allow for the completion of the process outlined in the MOA and to await the DOI's recognition decision.

### B. The Court's Authority to Stay Proceedings

A district court's power to stay proceedings "is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts have the power to stay proceedings *sua sponte*. *See S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir.

1988). When "it is efficient for its own docket and the fairest course for the parties [is] a stay of

an action before it," the district court may do so "pending resolution of independent proceedings

which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458,

1465 (9th Cir. 1983) (internal quotations omitted). In such circumstances, the Court weighs "the

competing interests which will be affected by the granting or refusal to grant a stay." *Lockyer v.*

*Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis*, 299 U.S. at 268). These

competing interests are: 1) the possible damage that could result from a stay; 2) the hardship that

the party seeking the stay may suffer by being required to go forward; and 3) the orderly course

of justice. *Lockyer*, 398 F.3d at 1110.

### 1. Possible Damage Resulting from a Stay

Since Plaintiffs argue that the process initiated by the MOA will not affect this litigation,

the Court considers the possible damage they would face as a result of a stay. A stay will prevent

Plaintiffs from receiving much of the discovery they seek from Defendants. (*See generally* Dkt.

No. 95.) In addition, Plaintiffs assert that Defendants continue to deprive them of their rights as

tribal members. (Dkt. No. 116 at 5.) Nevertheless, the Court finds that a delay in the proceedings

would cause only minimal prejudice to the Plaintiffs for two reasons.

First, a stay of proceedings would be short in duration. The length of a requested stay

must be balanced against the strength of the justification for it. *Yong v. Immigration and*

*Naturalization Serv.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (citation omitted).  The Tribal Council

election is scheduled for December 2, 2017 (Dkt. No. 117-12 at 2.) Under the MOA, the DOI

must issue its recognition decision by December 23, 2017. (Dkt. No. 117-1 at 8.) Accordingly, a

stay of proceedings will last for less than 90 days in order to allow the DOI to issue its decision.

Furthermore, trial in this case is not scheduled until September 2018, which mitigates the

prejudice Plaintiffs face by delaying discovery. (Dkt. No. 90.)

Second, the MOA specifically includes language that is meant to reaffirm the rights of

Plaintiffs as members of the Nooksack Tribe. (Dkt. No. 117-1 at 8–12.) The agreement states

that "all tribal members purportedly disenrolled since March 24, 2016 are members of the

Nooksack Indian Tribe, entitled to vote in Tribal Elections, to run for Tribal office, and to

receive the benefits of Tribal membership equally with all other Tribal members." (*Id*. at 9–10.)

This provision mitigates the harm to Plaintiffs caused by a stay of proceedings while the terms of

the MOA are in effect. Therefore, the Court finds a stay would cause minimal damage.

### 2. Possible Hardship or Inequity Resulting from Going Forward

Because Defendants would arguably benefit from a stay of proceedings, the Court

considers the hardship that might result from requiring them to proceed with the litigation.

Defendant Dodge currently has a motion for summary judgment pending before the Court. (Dkt.

No. 66.) The Court does not perceive a hardship to him if it were to adjudicate his motion.

The Kelly Defendants, however, occupy a much different procedural position than

Dodge. The Kelly Defendants have an interlocutory appeal pending with the Ninth Circuit,

which challenges this Court's denial of their motion to dismiss on grounds of sovereign

immunity and jurisdiction. (Dkt. No. 69.) In resisting Plaintiffs' discovery requests, the Kelly

Defendants have argued that this Court was divested of jurisdiction by the appeal and therefore

cannot order them to provide discovery. (Dkt. No. 125 at 3–4.) Without addressing the merits of

their argument, the Court acknowledges that the Kelly Defendants could face some hardship

were they compelled to provide discovery while their appeal is pending at the Ninth Circuit.

While the Kelly Defendants have sought an interlocutory appeal, Defendant Dodge has a

pending motion for summary judgment for which Plaintiffs seek discovery from the Kelly

Defendants. (Dkt. No. 102 at 8–9.) For the purposes of discovery, the issues on appeal are

difficult to untangle from the ongoing litigation, particularly because the RICO claims against

the codefendants are identical. Therefore, the Court does find that there would be some hardship

to the Kelly Defendants if they were forced to proceed with the litigation.

### 3. The Orderly Course of Justice

Finally, the Court considers "the orderly course of justice measured in terms of the

simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-255). The Court's primary reason for ordering a stay of proceedings is that DOI's recognition of the Tribal Council after elections could represent an event of jurisdictional significance. *See supra* Part II.A. The DOI's action will likely have substantial relevance to—or even control—the Court's subsequent rulings on this litigation. *Id*. Given that the pending tribal election could affect the Court's continued jurisdiction over this case, a stay of proceedings could conserve both the Court's and parties' resources. Pending before the Court are multiple discovery motions and Defendant Dodge's motion for summary judgment that could be affected or rendered moot by the DOI's decision. Therefore, the Court finds that a stay of proceedings would be in line with the orderly course of justice.

## III.    CONCLUSION

For the foregoing reasons, the Court STAYS all proceedings in this case until January 12, 2018. No later than January 12, 2018, the parties are ORDERED to file a joint status report that details the results of the Nooksack Tribal Council election and any subsequent action taken by the DOI in accordance with the MOA. The Clerk is DIRECTED to RENOTE Plaintiffs' motion to compel (Dkt. No. 95), Defendants' motion to quash subpoena *duces tecum* (Dkt. No. 98), Defendants' motion to strike notices of depositions and for protective order (Dkt. No. 125), and Objector Nooksack Indian Tribe of Washington's motion to quash (Dkt. No. 124) to January 26, 2018. The Clerk is further DIRECTED to RENOTE Defendant Dodge's motion for summary judgment to March 9, 2018.

DATED this 25th day of October 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE