UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARGRETTY RABANG, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT KELLY, JR., *et al.*,<br><br>Defendants. | CASE NO. C17-0088-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiffs' response to the Court's order to show cause (Dkt. No. 159) and Defendants' responses[1] (Dkt. Nos. 161, 164). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DISMISSES Plaintiffs' complaint without prejudice and without leave to amend for the reasons explained herein.

## I. BACKGROUND

This case arises out of the disenrollment of hundreds of members of the Nooksack Indian Tribe and subsequent Department of the Interior ("DOI") and Bureau of Indian Affairs ("BIA") decisions regarding the federal government's recognition of the Nooksack Tribal Council. The

---

[1] Defendants Kelly, George, Smith, Solomon, Johnson, Canete, King George, Romero, Edwards, and Armstrong ("Kelly Defendants") filed a consolidated response (Dkt. No. 161). Defendant Raymond Dodge Jr. ("Dodge") filed a separate response. (Dkt. No. 164.)

Court has provided a detailed factual background of this case in prior orders. (*See* Dkt. Nos. 62 at 1–6, 63 at 1–2, 130 at 1–4.) What follows is the relevant factual and procedural background leading to the Court's present decision.

Plaintiffs in this matter are "purportedly disenrolled" members of the Nooksack Indian Tribe.[2] (Dkt. No. 64 at 4.) Defendants are current and former members of the Nooksack Indian Tribal Council and other figures within the tribal government. (*Id*. at 4–6.) Plaintiffs bring suit against Defendants for alleged violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 ("RICO"). (*Id*. at 1.) Plaintiffs allege that Defendants abused their positions within the tribal government to carry out a scheme to defraud them of money, property, and benefits "by depriving [them] of their tribal membership." (*Id*. at 7.) To carry out this scheme, Plaintiffs allege that Defendants, among other things, illegally postponed elections, took legislative action through the Tribal Council without a required quorum, and actively prevented Plaintiffs and their attorneys from challenging Defendants' actions in the Nooksack Tribal Court. (*See generally* Dkt. No. 64.) In response to these actions, the DOI issued a series of decisions declaring that it would not recognize the legislative or judicial actions taken by the Tribe until a special election was held in accordance with tribal law. (*Id*. at 17–22.)

The Court previously denied the Kelly Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and on sovereign immunity grounds. (Dkt. No. 63.) Notwithstanding the Kelly Defendants' characterization of Plaintiffs' claims as a non-reviewable intra-tribal dispute, the Court ruled that it had subject matter jurisdiction over the case during the period that DOI refused to recognize the actions taken by the Nooksack Tribal Council. (*Id*. at 11.) The Kelly Defendants timely filed an interlocutory appeal challenging the Court's decision. (Dkt. No. 69); *Rabang v. Kelly*, No. 17-35427 (9th Cir. 2018).

On August 28, 2017, Defendant Kelly, in his capacity as Chairman of the Nooksack

---

[2] As it has done throughout this case, the Court expresses no opinion on the validity of the disenrollments by referring to these Nooksack tribal members as "disenrolled."

Tribal Council, entered into a Memorandum of Agreement ("MOA") with the Acting Assistant Secretary – Indian Affairs, on behalf of the DOI. (Dkt. No. 117-1 at 8–12.) Under the MOA, the DOI agreed to recognize the Nooksack Tribal Council as the governing body of the Nooksack Tribe, if the Tribe conducted a special election within a specified period. (*Id*. at 8.) In light of the MOA, the Court ordered a stay of proceedings, as the DOI's recognition of the Tribal Council could represent an event of "jurisdictional significance." (Dkt. No. 130 at 8.)

Since the Court entered its stay, the Nooksack Tribe has conducted two elections. On December 2, 2017, the Tribe held a special election to fill four seats on the Tribal Council. (Dkt. No. 145-1.) On March 9, 2018, the DOI concluded that the election results were valid and, pursuant to the MOA, once again recognized the Tribal Council. (*Id*.; Dkt. No. 162-2 at 2–6.) On May 5, 2018, the Tribe held a general election to select a Chairman and fill three seats on the Tribal Council. (Dkt. No. 162-4 at 2.) On June 11, 2018, the DOI's Principal Deputy Assistant Secretary – Indian Affairs, wrote a letter to the Tribe's new Chairman acknowledging his election and the election of the new Tribal Council members. (Dkt. No. 160-1 at 2.)

Following the DOI's recognition decision, the Kelly Defendants asked the Court to issue an indicative ruling to the Ninth Circuit stating that if the Court of Appeals remanded the Defendants' interlocutory appeal, this Court would dismiss the case for lack of subject matter jurisdiction. (Dkt. No. 144 at 2.) The Court denied Defendants' motion, reasoning that the Court of Appeals was poised to render a decision on that very issue. (Dkt. No. 153 at 5.) In response, the Kelly Defendants filed a voluntarily dismissal of their interlocutory appeal, which the Ninth Circuit granted. (Dkt. No. 157); *See also Rabang v. Kelly*, No. 17-35427, Dkt. No. 36 (9th Cir. 2018).

The Court lifted its stay and ordered Plaintiffs to show cause why their complaint should not be dismissed for lack of subject matter jurisdiction pursuant to the DOI's recognition decision and the Court's prior rulings. (Dkt. No. 156.) Plaintiffs filed a response (Dkt. No. 161) and both the Kelly Defendants and Defendant Dodge submitted an answer (Dkt. Nos. 161, 164).

## II. DISCUSSION

From the outset, the Court has made clear that its jurisdiction over this case "is not permanent or inflexible." (Dkt. No. 63 at 11.) In exercising jurisdiction, the Court drew an analogy to the tribal exhaustion rule, which holds that matters of internal tribal governance should not be adjudicated by federal courts unless and until tribal remedies have been exhausted. (*Id*. at 7–8); *see Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013). The Court relied on a narrow exception to the exhaustion rule, which provides for jurisdiction where "exhaustion would be futile because of the lack of adequate opportunity to challenge the [tribal] court's jurisdiction." *Grand Canyon Skywalk*, 715 F.3d at 1200.

The Court gave deference to the DOI decisions that refused to recognize actions taken by the Nooksack Tribal Council and Court, and concluded that Plaintiffs lacked an adequate opportunity to challenge the Tribal Court's jurisdiction. (Dkt. No. 63 at 11.) At the same time, the Court acknowledged that its exercise of jurisdiction was for "the interim period where the tribal leadership is considered inadequate by the DOI." (*Id*. at 10–11); *See Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Mississippi in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010) (BIA's recognition decision between two competing tribal factions is made on an "interim basis" and once "the dispute is resolved through internal tribal mechanisms, the BIA must recognize the tribal leadership embraced by the tribe itself.")

The Court previously stated that "if the DOI and BIA recognize tribal leadership after new elections, this Court will no longer have jurisdiction and the issues will be resolved internally." (Dkt. No. 63 at 11.) These circumstances have come to pass. The DOI recognized the Nooksack Tribal Council as the Tribe's governing body, following the agency's validation of the December 2017 special election. (Dkt. No. 145-1.) The Court's original basis for exercising jurisdiction under an exception to the tribal exhaustion rule no longer exists.

The Court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims. In general, Indian tribes possess inherent and exclusive power over matters of internal tribal

governance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989); *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983). The determination of tribal membership has long been recognized as a matter of internal tribal governance to be determined by tribal authorities. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72, n.32 (1978) (holding that tribes are immune from federal court jurisdiction in disputes regarding challenges to tribal membership); *Williams v. Gover*, 490 F.3d 785, 790 (9th Cir. 2007) ("[the Tribe] had the power to squeeze the plaintiffs out, because it has the power to define its own membership. It did not need the BIA's permission and did not ask for it . . . .").

At the heart of Plaintiffs' RICO claims is a dispute about their membership in the Nooksack Indian Tribe and the actions taken by tribal leadership to renounce their membership. (Dkt. No. 64 at 7) (Defendants carried out "their scheme to defraud Plaintiffs of money, property, and benefits by depriving Plaintiffs of their Tribal membership . . . ."). While Plaintiffs are correct that federal courts have jurisdiction over RICO claims, they refuse to acknowledge that resolution of their claims—whether on summary judgment or at a jury trial—would ultimately require the Court to render a decision about Plaintiffs' enrollment status. (Dkt. No. 48 at 3–4.) Plaintiffs cannot eliminate this inherent issue just by bringing their challenge as a civil RICO action. *See In re: Sac & Fox Tribe of the Miss. In Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 767 (8th Cir. 2003).

To resolve the enrollment dispute underlying Plaintiffs' claims, the Court would also have to interpret and make rulings regarding Nooksack Tribal law. The parties strenuously dispute whether Defendants' actions were taken in accordance with Tribal law and the Nooksack Constitution. (*Compare* Dkt. No. 34 at 12–13, *with* Dkt. No. 48 at 3–4.) To resolve these disputes, the Court would necessarily have to make rulings on tribal law that go beyond the scope of a district court's jurisdiction. *See, e.g.*, *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir. 1985) ("disputes involving questions of interpretation of the tribal constitution and tribal law [are] not within the jurisdiction of the district court.")

The Court cannot avoid interpreting tribal law simply by relying on prior decisions by the DOI and Nooksack Tribal Court of Appeals. While the Court previously gave deference to DOI's opinions about the Tribal Council's actions, such deference was only warranted in regard to DOI's interim recognition decision. *See Cayuga Nation v. Tanner*, 824 F.3d 321, 328 (2d Cir. 2016) ("BIA 'has both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe.'") (quoting *United Keetoowah Band of Cherokee Indians*, 22 IBIA 75, 80 (1992)). It would be inappropriate, however, for the Court to adjudicate Plaintiffs' claims by using DOI's decisions as authoritative rulings on tribal law. *See Sac & Fox Tribe of Mississippi in Iowa*, 609 F.3d at 943 (whether tribal chairman "was properly removed from office and whether he had general authority to act on behalf of the Tribe in a governmental capacity are pure questions of tribal law, beyond the purview of the federal agencies and the federal courts.")

Nor can the Court rely on prior tribal court opinions to resolve the parties' disputes regarding the legitimacy of Defendants' actions. (*See* Dkt. No. 34 at 12–13.) That is particularly true in light of actions taken by the Tribal Council since DOI's recognition decision. (*See* Dkt. No. 152-1) (resolution adopting all of the actions taken by the Chairman and Tribal Council during the period the DOI refused to recognize the Nooksack Tribal Council).

Plaintiffs have not provided the Court with sufficient reasons to find that it retains jurisdiction over their claims. Plaintiffs first assert that subject matter jurisdiction is determined at the time a lawsuit is filed. (Dkt. No. 159 at 4.) But the authority Plaintiffs cite in support of their position deals primarily with cases involving diversity jurisdiction. *See, e.g.*, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). None of the cases Plaintiffs cite deal with the facts presented by this case. Moreover, Plaintiffs' position is not supported by the directive contained in Federal Rule of Civil Procedure 12(h)(3) that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Plaintiffs next assert that the Court retains jurisdiction under the law of the case doctrine.

"Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). Application of this doctrine does not preclude the Court from reconsidering its jurisdiction. In fact, the Court is bound to reconsider its ruling on subject matter jurisdiction based on its prior rulings.[3] (Dkt. No. 62 at 11) ("[I]f the DOI and BIA recognize tribal leadership after new elections, this Court will no longer have jurisdiction and the issues will be resolved internally."). The Court similarly disagrees with Plaintiffs' argument that the Kelly Defendants are judicially estopped from re-litigating the issue of subject matter jurisdiction because they voluntarily dismissed their interlocutory appeal, which addressed that very issue. (Dkt. No. 159 at 5–6.) The Court is *sua sponte* readdressing its jurisdiction based on a change in circumstances and its prior rulings—the Kelly Defendants' dismissal of their appeal has no bearing on the Court's inquiry.

Plaintiffs finally argue that their RICO claims deal with past fraudulent conduct that is unaffected by the DOI's recent recognition of the Tribal Council. (*Id.* at 7.) Plaintiffs assert that the DOI's recognition decision did not undue its previous opinions concluding that the Tribal Council and Tribal Court had acted without authority. (*Id.*) The Court disagrees. The relevant issue for assessing the Court's jurisdiction is whether the DOI recognizes the Tribal Council as the governing body of the Nooksack Tribe. (*See* Dkt. No. 62 at 11.) In the absence of such recognition, the Court gave deference to the DOI's opinions and found it had jurisdiction for an interim period. (*Id.*) Pursuant to the MOA and the DOI's recent recognition decision, the DOI's past decisions no longer provide a basis for this Court to exercise jurisdiction.

---

[3] The Court is also bound by Federal Rule of Civil Procedure 12(h)(3) to reconsider the question of subject matter jurisdiction. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) ("federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists") (citation and internal quotations omitted).

Although the Court concludes that it no longer has subject matter jurisdiction over this case, it does not at all think, as Defendants suggest, that "the cloud over the Tribe" has been removed. (Dkt. No. 164 at 2.) Plaintiffs' allegations against Defendants, which have been well documented in this lawsuit and elsewhere, are highly concerning. Nevertheless, it is for the Nooksack Tribe, not this Court, to resolve Plaintiffs' claims.

### III. CONCLUSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), the Court DISMISSES Plaintiffs' complaint without prejudice and without leave to amend. The Clerk is DIRECTED to close this case.

DATED this 31st day of July 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE